QUINN v. CHICAGO, M. & ST. P. RY. CO.

A "water course" is usually referred to as one having well-defined bed and banks.

A railway company constructing an embankment across a natural channel through which surface waters naturally flow must construct culverts of sufficient capacity to carry off the surface waters flowing through the channel; and, where it fails to do so, and an upper proprietor is damaged by reason of the water being thrown back on his land, it is guilty of negligence, and liable for resulting damages.

Evidence that a channel, through which accumulated surface waters were discharged, existed prior to the construction of a railroad embankment across the channel, that prior to such construction the waters flowing through the channel were carried away from the land, and that by reason of the embankment the water was dammed up and thrown back on the land, rendering a part thereof unfit for cultivation, authorized a finding that the railroad negligently constructed the embankment by failing to construct proper culverts.

Where there is a conflict in the evidence, the Supreme Court will not weigh the same, or go further than to determine that there is suf-

ficient evidence to sustain the verdict, without regard to the evidence of the adverse party.

An instruction, in an action against a railroad company for negligently constructing an embankment across a natural channel, and thereby obstructing the natural flow of surface waters; that the owner of the land damaged by the water is entitled to recover a just and fair compensation for the injury from the negligent erection of the embankment—sufficiently defines the measure of damages, in the absence of any requested instruction on the subject.

Where no crop was raised on land because of the wrongful act of one backing water on it, the measure of damages was the rental value of the land, though the same was in the possession of a tenant required to pay a portion of the crop as rent.

(Opinion filed, April 6, 1909.)

Appeal from Circuit Court, Hutchinson County. Hon. E. G. SMITH, Judge.

Action by M. F. Quinn against the Chicago, Milwaukee & St. Paul Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

*Preston & Hannett,* for appellant.

No damage can insue, nor can the owner be interfered with by any consideration of injury to other lands which may be occasioned by the flow of surface water in consequence of lawful appropriation of land by its owner to a particular use or mode of enjoyment. Gannon v. Hargadon, 92 Mass. 106; Sweet v. Cutts, 9 Am. Rep. 270; Hoyt v. The City of Hudson, 9 Am. Rep. 473; Parks v. City of Newburyport, 76 Mass. 28; Gibb v. Williams et al., 25 Kan. 215; Morrissey v. C., B. & Q. R. R. Co., 58 Am. & Eng. R. R. Cases 622; Bowlsby v. Speer, 86 Am. Dec. 216; Chadcayne v. Robinson, 3 Am. St. Rep. 55; Jack v. Lallis, 37 N. E. 728. The rule is the same with respect to railroads as with individuals. There exists no natural servitude in favor of the owner of the superior or higher ground or fields, as to mere surface water, or such as falls or accumulates by rain or the melting of snow, and that the proprietor of the inferior or lower estate may, if he choose, lawfully obstruct or hinder the natural flow of such water thereon, and in so doing may turn the same back, upon, or off, on to, or over the lands of other proprietors, without liability for injuries ensuing from such obstruction or diversion. This view is held in railroad cases, some of which are as follows: Greeley v. Maine

Cent. R. R. 53 Me. 200; Momson v. Bucksport R. R. 67 Me. 353; Curtis v. Eastern R. R. 14 Allen 55; Jean v. Penn. Co. 36 N. E. 159; Abbott v. Kan. City R. R. 20 Am. & Eng. R. R. Cases 103. A railroad company is not bound to provide the embankment of its road-bed with sufficient water-ways and culverts to allow the usual amount of surface water from surrounding lands to pass under and through the same, when there is no well defined channel or ravine crossing and closed by the embankment. Rowe v. St. P., M. & M. Ry., 41 Minn. 384.

W. J. Hooper and J. L. Quinn, for respondent.

No one has a right to collect surface water upon his premises and flow it back upon his neighbor, or after being collected in large quantities to discharge it upon the adjoining estate to the injury of the latter. He may dyke against the flow upon his premises. He may use such reasonable means as are necessary to retain it upon his premises, if he so desires, but he cannot use his own premises to accumulate it in large quantities and then flow it down upon his neighbor, causing the latter damage or injury or causing water to flow backward upon the lands of his neighbor, thereby causing injury. Aldritt v. Fleischauer, 103 N. W. 1084; N. Y. C. & St. L. Ry. Co. v. Hamlet Hay Co., 47 N. E., 1060; Kelly v. Dunning, 39 N. J. Equity 482; Eulrich v. Richer, 41 Wis. 320; Earl v. DeHart, 12 N. J. Equity, 280; Board of Com. v. Wagner, 38 N. E. 181; Schwartz v. Nie, 64 N. E. 619.

CORSON, J. This action was instituted by the plaintiff, the owner of a tract of land, to recover of the defendant damages which he alleges he has sustained by reason of the negligent damming up of the waters of a ravine, water course, or draw by the defendant, which flowed over the plaintiff's land and across the defendant's right of way. Verdict and judgment being in favor of the plaintiff, the defendant has appealed.

It is alleged in the complaint, in substance, that continuously since the year 1878 the plaintiff has been the owner of a quarter section of land in Bon Homme county, and in possession of the same either personally or by tenants; that there is a natural water course running across said land of the plaintiff, and across the defendant's right of way, which water course or ravine extends

about two miles from plaintiff's said land, and empties into Emanuel creek; that said ravine or water course is well defined its entire length; that said water course or ravine is the natural drain for all of such land, and such other land in that vicinity, and the only drain; that in the year 1879 the said defendant acquired a right of way across the said premises, which said right of way intersects the said ravine or water course; that in said year the defendant, in constructing its roadbed along its said right of way, constructed an artificial embankment across said water course or ravine where the same intersects said right of way; that by reason of the said embankment there is no means for the surface water to escape from the land of the plaintiff other than by the said ravine or water course; that before the erection of said embankment the said draw, ravine, or water course completely drained all of the plaintiff's said land; that the railway company negligently constructed said embankment without an opening or culvert to allow the waters from said tract of land to escape, thereby causing the surface waters produced by rains and melting snow to accumulate in large quantities covering several acres of the plaintiff's land, resulting in damage to the plaintiff of $1,000, for which sum the plaintiff demands judgment. The defendant admitted its incorporation, and that it constructed the embankment referred to in the plaintiff's complaint, and also pleaded the statute of limitations, and denied all the other allegations of the complaint. It will thus be seen that the water course claimed to have been dammed up by the defendants embankment, and the waters therein flowing, thrown back upon the plaintiff's land, did not show such a water course as to constitute a running stream having well-defined bed and banks, but a waterway or channel made by the depression or draw extending over the plaintiff's land.

While the amount involved in this action is comparatively small, the principles of law applicable to the case are important, and we, therefore, deem it proper to quote quite liberally from the charge of the learned trial court. The court, among other matters, charged the jury as follows: "Every proprietor of land may lawfully improve his property by doing what is reasonably neces-

sary for that purpose, and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface waters to flow onto the premises of the latter to his damage; but, if in the execution of said enterprise he is guilty of negligence which is a natural and proximate cause of injury to his neighbor, he is accountable therefor. * * * The rule of law that the owner of a tract of land may obstruct the flow of surface water across his land appears to have an exception, which is that, where surface water having no definite source is supplied from the falling rains and melting snow of the hilly regions or high bluffs, and owing to the natural formation of the surface of the ground, is forced to seek an outlet or natural channel, and escapes through such channel regularly during the spring and summer months of every year, and in seasons of heavy rain, and such has always been the case so far as the memory of man runs, therefore surface waters may have such an accustomed flow as to form, at certain places, a channel or course. * * * A railway company, or other proprietor of land, cannot throw an embankment across such a ravine as above described, into and through which the surface water of a large scope of country is accustomed to flow, without providing adequate means for the usual flowage of water seeking its natural outlet. The company was under no obligation to guard against the flow of surface waters upon the premises of the plaintiff under ordinary circumstances, and where the conformation of the surrounding country did not force the water towards a given point of final drainage, where a channel had been formed through which it seeks its natural outlet. The question whether or not the defendant railroad company was negligent in the construction of its embankment across such a ravine as is in question here, which is alleged to have traversed the plaintiff's land, is a question which you must determine from all the evidence and circumstances in evidence before you, and in passing upon this question you should take into consideration the length of the ravine or draw; the area of land which it and its branches and feeders drain, above and below the point where the railroad crosses it; the height of its banks; its width; and whether or not water flowed or stood

in the same for any length of time. You should consider the configuration of the ground at the place where the railroad embankment crosses it, the height of the embankment, and all other facts which have been testified to before you, which will aid in deciding upon the effect that the construction of said embankment had upon the surface waters which flowed down said draw. * * * If you find, under the rules of law thus given to you, that the defendant company has negligently constructed its embankment, that the embankment itself has been the cause and occasion of any injury to this plaintiff—then the plaintiff would be entitled to recover a just and fair compensation for such injury. If the defendant company has not been guilty of negligence in the matters called to your attention, then your verdict ought to be for the defendant, and in any event the defendant company would not be liable for any damages which were not the result of its negligence in the erection of this embankment."

It is contended by the appellant that the court in its charge to the jury, in the view he takes of the law applicable to this case, was in error; but in our opinion, if the court errs at all in its charge, the error was in favor of the defendant, and not against it. That part of the charge especially excepted to is: "A railway company or other proprietor of land cannot throw an embankment across such a ravine as above described into and through which the surface waters of a large scope of country is accustomed to flow, without providing an adequate means for the usual flowage of water seeking its natural outlet." The court's charge in this respect was clearly correct, and in our opinion is sustained by the great weight of authority. Mr. Farnham, in his work on Waters and Water Rights, in discussing this subject says (page 2599, § 889b) : "The question of the right to obstruct a natural drainage channel has been needlessly complicated with the further question whether or not a water course existed. The rules with respect to water courses form a distinct class by themselves, and were formulated to conserve the interests of the riparian owners. On the other hand, the question of drainage involves, not only the welfare of the individual landowner, but also that of the community in so far as its healthfulness and prosperity depend upon re-

lieving land of stagnant water and improving its productiveness. * * * Under this rule the great weight of authority is in favor of the proposition that a lower proprietor cannot place any obstruc-. tion in any obvious drainage channel which has been formed by nature, and carries the water from a higher to a lower estate. * * * But there is no reason why, if the rule of water courses, rather than that of drainage, is to be applied, it should not be applied to this class of channels. That these drainage channels cannot be obstructed is supported by the great weight of authority." The learned author refers as authority to a large number of cases, including decisions in England, Canada, and Ireland, and some 18 or 20 of the American states. While it did not appear from the evidence in the case at bar that there was a defined water course having well-defined bed and banks, which is usually referred to as a "water course" in the authorities, still it was shown that there was a natural water course or ravine; and, although the water course was not one having well-defined bed and banks, it was one in which the surface waters from some 40 or 50 acres of the plaintiff's land found an outlet, and consequently such a channel comes within the rule that it cannot be negligently obstructed by a railroad company or natural person.

The rule applicable to this class of cases seems to be very clearly stated in Lambert et al. v. Alcorn, 144 Ill. 313, 33 N. E. 53, 21 L. R. A. 611. In that case the court says: "One radical fallacy in this contention grows out of the restricted definition sought to be placed by the complainants upon the term 'water course,' as applied to the drainage of surface water from one tract of land onto another. If the conformation of the land is such as to give to the surface water flowing from one tract to the other a fixed and determinate course, so as to uniformly discharge it upon the servient tract at a fixed and definite point, the course thus uniformly followed by the water in its flow is a water course within the meaning of the rule applicable to that subject. Doubtless such water course can exist only where there is a ravine, swale, or depression of greater or less depth, and extending from one tract onto the other, and so situated as to gather up the surface water falling upon the dominant tract and to conduct it along a

defined course to a definite point of discharge upon the servient tract. But it does not seem to be important that the force of the water flowing from one tract to the other has not been sufficient to wear out a channel or canal having definite and well-marked sides or banks. That depends upon the nature of the soil and the force and rapidity of the flow. If the surface water in fact uniformly or habitually flows off over a given course, having reasonable limits as to width, the line of its flow is, within the meaning of the law applicable to the discharge of surface water, a water course." The rule as laid down in that case was subsequently affirmed in the case of Ribordy v. Murray et al., 177 Ill. 134, 52 N. E. 325, in which that learned court uses the following language: ."It is true there was no well-defined water course in the sense in which that term is often used, having well-defined banks and beds. But that was not necessary. If the conformation of the land was such as to give the surface water flowing from one tract to another a fixed and determinate course, so as to uniformly discharge it upon the servient tract at a fixed and definite point, the course thus uniformly followed by the water in its flow is a water course within the meaning of the rule applicable to this class of cases." Lambert v. Alcorn, supra.

It is further contended by the appellant that inasmuch as the common law is in force in this state, except where it conflicts with the Codes or Constitution, the rule as established by the Illinois court, and as laid down by Farnham in his work, is the rule of the civil law, and not of the common law, but Farnham in his able work, after a very full review of the civil law and the common law, says: "The common and civil law, therefore, appear to be the same so far as the right to have the water follow its natural course is concerned." Sections 889b, 2589, vol. 3. And in the analogous case of Lincoln & B. H. R. Co. v. Sutherland, 44 Neb. 526, 62 N. W. 859, the learned Supreme Court of Nebraska held that every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose; and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow on the premises of the latter to his

damage. But if in the execution of such enterprise he is guilty of negligence, which is the natural and proximate cause of injury to his neighbor, he is accountable therefor. And in the course of its opinion the court uses the following language: "The basis of their action against the railroad company was the negligent construction of the embankment across the draw, in this: That in constructing it they left no opening in the embankment through which the waters which had been accustomed to collect in said draw might escape. * * *" And that court, after reviewing the authorities bearing upon the subject stated, says: "But these cases, and all of them, also recognize the rule that a proprietor must so use his own property as not to unnecessarily and negligently injure another." The most lucid and logical statement of the rule under consideration that has been made by this court will be found in Association v. Peterson, 41 Neb. 897, 60 N. W. 373, where Post, J., speaking for the court said: "Every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow on the premises of the latter to his damage. But if in the execution of such enterprise he is guilty of negligence, which is the natural and proximate cause of injury to his neighbor, he is accountable therefor. * * *" In that case where the railroad company had constructed an embankment, but had constructed no culvert to carry off the surface waters; and, by reason of the embankment and the failure to construct therein a culvert of sufficient capacity to carry off the surface waters, the plaintiff was damaged, and the verdict in his favor was affirmed. In Chicago, R. I. & P. R. Co. v. Shaw, 63 Neb. 380, 88 N. W. 508, 56 L. R. A. 341, which was also an analogous case to the one at bar, the law as laid down in the former case was affirmed, and the court in its opinion in the latter case says: "We regard it as now settled by the former decisions of this court that a railway company, or other proprietor of land, cannot throw an embankment across a ravine or draw, into and through which the surface water of a large scope of country is accustomed to flow, without providing ade-

quate means for the usual flowage of the water naturally seeking an outlet. * * *"

The appellant relies largely upon the case of Gibbs v. Williams et al., 25 Kan. 215, 37 Am. Rep. 241, but we are clearly of the opinion, from an examination of the authorities cited by counsel for the respondent, and more fully by Farnham in his work on Water and Water Rights, that the case is against the weight of authority, and it does not meet with our approval. It is quite clear, therefore, that under the authorities it is the duty of a railroad company, in constructing an embankment across a channel or ravine through which surface waters naturally flow, to construct a culvert, or culverts, of sufficient capacity to carry off the surface waters flowing through the same, and that in failing to do so, and an upper proprietor is damaged by reason of the water thrown back upon his land, such company is guilty of negligence, and liable for such damages as may result by reason of such negligence.

It is further contended by the appellant that the evidence does not sustain the verdict of the jury in finding that there was such a ravine or channel, through which the surface waters accumulating upon the plaintiff's property naturally flowed in their way to a natural creek. But we are of the opinion that the jury, if they believed the plaintiff's witnesses, was fully justified by the evidence in finding that there was such a natural channel, and that the embankment was negligently constructed by the defendant, by its failure to construct a culvert therein, as above stated. There was evidence on the part of the plaintiff tending to prove that this water channel, depression, or ravine through which the surface waters accumulating upon its land were discharged, existed prior to the construction of the embankment by the defendant company, and that prior to the construction of the same the waters flowing through said ravine or draw were carried away from the plaintiff's land, and that by reason of this embankment the water was dammed up and thrown back upon the plaintiff's land, rendering some 10 or 12 acres of the same unfit for cultivation, and upon which no crops during certain years could be raised. If the jury believed this evidence, and their verdict indicates that they did, the verdict

was amply sustained by the same. It is true the evidence was conflicting, but it was the province of the jury to weigh this conflicting evidence, and determine therefrom the proper verdict to be rendered. When there is a conflict in the evidence, this court will not weigh the same, or go further than to determine that there was sufficient evidence, without regard to the evidence of the defendant, to sustain the verdict of the jury. Jeansch v. Lewis, 1. S. D. 609, 48 N. W. 128. No useful purpose would be served by a review or reproduction of the evidence in this opinion.

It is further contended by the appellant that the court erred in its charge to the jury upon the measure of damages, and that the court failed to instruct the jury fully upon this subject. But no instructions were requested upon this subject by the appellant, and we discover no error in the charge of the court in submitting to the jury this question. It appears from the evidence that, during one of the years for which damages were demanded, the premises were leased by the plaintiff, and in order to fix the damages for that year the plaintiff introduced evidence tending to show that the rental value of the property was $5 per acre for the land upon which no crops were raised by reason of being flooded by the waters thrown back by the embankment; and it is claimed that, as the proof tended to show that the plaintiff was to receive a portion of the crop as rental, and not money, and the portion of the crop he was to receive was not shown, therefore the plaintiff was not entitled to recover anything as damages for that year. But where, as in this case, no crop is raised, it would seem that the most satisfactory method of fixing the damages was the rental value of the land.

We do not deem it necessary to review the great number of decisions made by the various courts, and cited by counsel, upon the question presented, as the cases are conflicting, and such a review would serve no useful purpose.

Finding no error in the record, the judgment of the court below is affirmed.

SMITH and McCOY, JJ., not sitting.