## WILKERSON v. GARRETT et al.
### (No. 6520.)

(Court of Civil Appeals of Texas. San Antonio. March 3, 1921. Rehearing Denied March 30, 1921.)

1. **Waters and water courses** ⬅119(1)—Landowner protecting his land from water, may not thereby injure the property of another.

While a landowner may use proper means to protect his land from water, he must not use his neighbor's land nor his own in such a manner as to destroy or deteriorate the property of another nor interfere with the lawful use or enjoyment thereof.

2. **Waters and water courses** ⬅119(2)—Diversion of all surface water from defendant's land into drain passing over plaintiff's land held invasion of plaintiff's rights.

Where a landowner built a dam on his land to obstruct the flow of waters from a hill diverting them from a former course, and opened a new ditch casting all the water which would have gone across his land into a drain that ran across plaintiff's land, such action constituted a flagrant invasion of the rights of plaintiff.

3. **Waters and water courses** ⬅125—Landowner liable in compensatory damages for concentration and discharge of surface water on land of another.

A landowner is liable in compensatory damages for the construction of dams and ditches on his land so as to concentrate surface water and discharge it on the land of another.

4. **Waters and water courses** ⬅124—Party injured by wrongful discharge of surface water by another may abate nuisance.

Where landowner by construction of dams and ditches on his land has concentrated surface water and. discharged it on the land of another, the injured party is not only entitled to damages, but may abate the nuisance.

5. **Nuisance** ⬅9—Creator liable for continuance, though he conveys property.

The creator of a nuisance cannot by conveying the property to a third person escape liability for damages caused by the continuance of the nuisance.

6. **Nuisance** ⬅10—Purchaser liable for affirmative acts.

The purchaser of land on which exists a nuisance created by his grantor is not liable for merely permitting it to remain or continue in the absence of a request to abate it, but, where he by affirmative acts continues the nuisance, he is liable for all damages caused thereby.

7. **Waters and water courses** ⬅119(6)—Purchaser of land increasing wrongful concentration of surface water commenced by his grantor held liable as for nuisance.

Where a landowner constructed a dam on his property concentrating surface water and discharging it on plaintiff's land, and thereafter sold the land to another, who built the dam higher, dug new ditches, and cleaned out the old ones, thus increasing the flow of surface water, such purchaser thereby made the nuisance his own and became liable for all damages caused by it after his connection therewith.

Appeal from District Court, McLennan County; E. J. Clark, Judge.

Action by Mrs. Mollie O. Garrett and others against W. A. Wilkerson and another. Judgment for plaintiffs, and defendant named appeals. Affirmed.

Abe Gross and E. C. Street, both of Waco, for appellant.

R. L. Henderson, Walton D. Taylor, and Joseph W. Hale, all of Waco, for appellees.

FLY, C. J. This is a suit brought by Mollie O. Garrett, joined by her husband, W. T. Garrett, against E. Rotan and W. A. Wilkerson, seeking to recover damages to land and crops thereon by reason of the unlawful and wrongful diversion of surface water so as to damage both land and crops. It was alleged by appellees that Mollie O.' Garrett owned a tract of about 240 acres of land lying adjoining, and on a lower level, a certain tract of 800 acres of land owned prior to November 30, 1917, by E. Rotan, but which was conveyed by him in the year 1917 to W. A. Wilkerson; that prior to 1915 surface water from the Wilkerson. farm and other lands adjacent thereto had flowed across the land of appellees through a ditch about 400 yards east of the Brazos river, which lies west of the land of appellees; that in March or April, 1915, Rotan began the construction of a dam and ditch about 1,800 feet long; "that the dam and ditches constructed and dug by defendant caused a large quantity of water to be accumulated and to flow swiftly onto plaintiff's land in large quantities so as to completely inundate and overflow a large portion of her tillable land," destroying crops and washing away the land. The cause was submitted to a jury on sixteen special issues on the court's initiative and three requested by Rotan, and on the answers thereto the court rendered judgment for appellees against appellants for $950, and also granted a mandatory writ of injuction requiring Wilkerson to fill the ditch which runs from the south end of the dam on his farm, and enjoining him from maintaining the dam and ditch. This appeal is perfected by Wilkerson alone.

The evidence showed that appellant was the active cause in diverting surface water from his land and causing it to flow on the land of appellees. They were damaged in the sum found by the jury. Other necessary facts are found in considering the assignments of error.

The first assignment of error complains of

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the refusal of the court to instruct a verdict in favor of Wilkerson, and under that assignment appellant advances the propositions that appellant had a vested right under the patent to the land granted by the state, and no law could have retroactive effect, and, if so intended, the act of the Thirty-Fourth Legislature (General Laws, p. 17 [Vernon's Ann. Civ. St. Supp. 1918, art. 5011t]) which prohibits the diversion of surface waters would be null and void as to all lands except those owned at the time by the state. He contends that the common-law right permits absolute control of the surface water by the landowner and gave him the vested right to collect such water into a ditch and throw it on the land lying on a lower level, and that Legislature nor court could disturb him in the exercise of such right, and he draws a poetic picture of some sturdy pioneer locating a tract of land in a fertile valley at the foot of a mountain, and digging ditches and building leevees to protect him from the surface waters rushing down the mountain side, but he fails to notice the neighbor further down the slope upon whom the pioneer turns the assembled surface waters, destroying his crops and washing away the soil. He also has some rights that the courts must protect.

[1] Appellant undoubtedly could have used proper means to have protected his land from water, but, as said by this court in Gembler v. Echterhoff, 57 S. W. 313:

"Every man has the right, under the law, to get the fullest use and enjoyment out of his land; but he must not use his neighbor's land, nor use his own, in such a manner as to destroy or deteriorate the property of another, or interfere with the lawful use or enjoyment thereof. He may be permitted to turn surface water from his own land by embankment or improvement, but he cannot obtain possession of the surface water, and then use it in such a manner as to damage the man owning land adjacent to him."

That was said when the common-law rule prevailed and before the statute on the subject was enacted. It has been often cited and approved. Railway v. McGehee, 75 S. W. 841; Gramann v. Eicholtz, 36 Tex. Civ. App. 310, 81 S. W. 757; McLellan v. Land Co., 46 Tex. Civ. App. 256, 103 S. W. 209; Batla v. Goodell, 53 Tex. Civ. App. 180, 115 S. W. 624; Railway v. Slusher, 42 Tex. Civ. App. 633, 95 S. W. 717; Quinn v. Railway, 23 S. D. 126, 120 N. W. 884, 22 L. R. A. (N. S.) 789, with notes on numerous cases. It has never been the law in this state that a landowner had the right to concentrate surface water in artificial channels and cause it to flow on adjoining property and damage it.

The doctrine of the common law is thus stated in the Kansas case of Gibbs v. Williams, 25 Kan. 216, 37 Am. Rep. 243, and quoted with approval by the Texas Supreme Court in Barnett v. Rice Co., 98 Tex. 355, 83 S. W. 801, 107 Am. St. Rep. 636:

"It is not one of the legal rights appertaining to land that the water falling upon it from the clouds shall be discharged over land contiguous to it: and this is the law, no matter what the conformation of the face of the country may be, and altogether without reference to the fact that in the natural condition of things the surface water would escape in any given direction. The consequence is therefore that there is no such thing known to the law as a right to any particular flow of surface water jure naturæ. The owner of land may at his pleasure withhold the water falling on his property from passing on to that of his neighbors, and in the same manner may prevent the water falling on the land of the latter from coming upon his own. In a word, neither the right to discharge nor to receive surface water can have any legal existence except from a grant, express or implied."

Appellant has no grant, express or implied, clothing him with the authority to concentrate the surface waters falling on his land and discharge them in a body on the land adjacent to him. It is not a question of repelling surface water from his land or of retaining it on his land, but of collecting it and discharging it in such a body upon the land adjacent to his as to seriously damage it. The common law, nor any other kind of law, justifies such action. It is not a question of retaining a right, but one of invading the rights of another, and there is no analogy between this case and those of riparian rights cited by appellant. It was unlawful to throw surface waters in a body on the land of an adjacent owner so as to damage him before the passage of the law of 1915, which forbids the diversion of the natural flow of surface waters in such a manner as to damage the property of another by the overflow of the water diverted or impounded. Vernon's Ann. Civ. St. Supp. 1918, art. 5011t. This court, in the cited case of Gembler v. Echterhoff, stated the correct rule under the common law when it held:

"The right of the owner of the upper estate to appropriate or withhold, or the owner of the lower estate to repel, surface water, is a general right of flowage or repulsion only in natural ways and natural quantities. If he alters the natural conditions so as to change the course of the water, or concentrate it at a particular point, or by artificial means to increase its volume, he becomes liable for any injury caused thereby."

That has always been the law in Texas, although the Supreme Court would not express an opinion thereon in the cited case of Barnett v. Rice & Irr. Co., in which it sought to distinguish the case of Gembler v. Echterhoff from the one it was deciding. The common law permits protection of a man's property by checking the flow of surface waters, but does not justify the concentration of

them and discharging them in bulk on the property of another.

[2-4] This case presents a flagrant invasion of the rights of another, for not only did Rotan build a dam to obstruct the flow of waters from the hill and prevent them from finding their way to the Brazos river through the old ditch that ran along the western part of his and the Garrett's land, but he blasted the stone and opened up a new ditch through what is called in the record the "toe" of the hill, and cast all the water which would have gone across his land into a drain that ran across the eastern part of the Garrett land. Appellant bought the land from Rotan in 1917, and not only maintained the dam and ditch, but raised the height of the dam so as to accumulate more water, and deepened and widened the ditches dug by Rotan and dug others and caused a greater quantity of water to flow across the land of appellees. He made himself an active participant in the wrong inflicted on appellees. This was done after the law passed in 1915 went into effect, but, independent of that law, a landowner is liable in compensatory damages for the construction of dams and ditches on his land so as to concentrate surface water and discharge it on the land of another. Paddock v. Somes, 102 Mo. 226, 14 S. W. 746, 10 L. R. A. 254; Eufaula v. Simmons, 86 Ala. 515, 6 South. 47; Farnham, Waters & Water Rights, § 887, pp. 2578-2880. The injured party is not only entitled to damages, but may abate the nuisance.

[5-7] It is the rule that the creator of a nuisance does not, by conveying the property to a third person, escape liability for the damages caused by the continuance of the nuisance. It is also settled that the purchaser of land on which exists a nuisance created by his grantor is not liable for merely permitting it to remain or continue, in the absence of a request to abate it, but where the purchaser by affirmative acts continues the nuisance, such as making changes in the structure or character of the nuisance, he is liable for all damages caused thereby. 20 R. C. L. 15, 16, and authorities cited in footnotes; Central Consumers' Co. v. Pinkert, 122 Ky. 720, 92 S. W. 957, 13 Ann. Cas. 105; Tetherington v. Railway, 226 Ill. 129, 80 N. E. 697, 12 L. R. A. (N. S.) 571; Hynes v. Brewer, 194 Mass. 435, 80 N. E. 503, 9 L. R. A. (N.S.) 598. By his acts in digging new ditches, cleaning out and enlarging the old ones, and building the embankment higher, appellant made the nuisance his own and became liable for all damages caused by it after his connection with it. Falkenbury v. Wells, 28 Tex. Civ. App. 621, 68 S. W. 327; Clark v. Dyer, 81 Tex. 339, 16 S. W. 1061.

The doctrine as to surface water is thus stated by Kinney in his work on Irrigation and Water Rights, p. 2969:

"In general, however, it may be said that an owner of upper lands may have the surface waters from his land flow in their natural course down to the lands below without incurring any liability therefor. But, upon the other hand, he is not permitted, by the construction of dams, ditches, or other works, to turn the surface waters, which flow or have accumulated on his land, down on the lands of his neighbors. And where such works are constructed and such water is thereby caused to flow on the land of another, which would not naturally flow thereon, there is an invasion of his neighbor's right of property and a nuisance per se, and against the continuance of which an action for an injunction will lie."

The text is well sustained by decisions. Ladd v. Redle, 12 Wyo. 362, 75 Pac. 691; Galbreath v. Hopkins, 15 Cal. 297, 113 Pac. 174; and others cited by the author.

The court submitted to the jury the question as to whether appellant dug a ditch after he bought the land, extending one dug by Rotan, causing a greater quantity of water to run across the land of appellees, and as to whether appellant threw up a certain embankment and whether it caused more water to run on appellees' land. Every issue raised by the evidence was submitted by the court, and it was not error to refuse the special issues sought to be presented by appellant. The second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth assignments of error are overruled. Appellant actively adopted the nuisance and became liable for all damages arising from the diversion of the surface water. He continued the nuisance in the teeth of article 5011t, Vernon's Ann. Civ. St. Supp. 1918, which was then in effect, and which condemned a continuance of the nuisance just as justice and equity condemned it. Appellant had no vested right to concentrate the surface water on his own land and throw it on adjacent land by dams and ditches.

The judgment as to the injunction is clear and easy to be understood, and the assignment assailing it is overruled.

The judgment is affirmed.