**NORTH TEXAS COMPRESS & WAREHOUSE CO. v. HOWARD et al.**
**(No. 6803.)**

(Court of Civil Appeals of Texas. Austin. Jan. 7, 1925.)

1. **Waters and water courses** ⚖☞119(2)—Owner under common law could not collect surface waters and discharge them on lands which they would never naturally reach.

Under the common law, recognized prior to Act May 29, 1915 (1st Called Sess.) c. 7, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), the owner of real property had a right to repel surface water from his premises without liability to adjacent property owners, but had no right to collect surface waters falling upon his own land and discharge them on lands which by nature they would never reach.

2. **Trial** ⚖☞352(1)—Objection to special issue, in action for diverting surface water, as retroactive construction of statute abolishing common law, held untenable, where all evidence showed acts complained of were subsequent to effective date of statute.

In action for damages for diverting natural flow of surface waters, a special issue embodying a rule, incorrect under the common law as it existed prior to 1915, was not objectionable as construing Act May 29, 1915 (1st Called Sess.) c. 7, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), as retroactive, where evidence was all to the effect that acts of defendant complained of were subsequent to effective date of such statute.

3. **Constitutional law** ⚖☞190—Waters and water courses ⚖☞118—Statute prohibiting diversion of surface waters unconstitutional in so far as retroactive.

In so far as Act May 29, 1915 (1st Called Sess.) c. 7, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), making landowners liable for diversion of surface waters, applied to structures lawfully erected prior to and in existence at effective date of act, it was violative of constitutional provision inhibiting retroactive laws.

4. **Waters and water courses** ⚖☞125—Statutory liability limited to property damage caused by overflow of surface water.

Act May 29, 1915 (1st Called Sess.) c. 7, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), making landowners liable for diversion of surface waters, by its express language only inhibits impounding or diversion of surface water in such manner as to damage property of another by overflow, and recovery is limited to property damage caused by overflow.

5. **Appeal and error** ⚖☞1062(2)—Refusal of special issue limiting recovery for diversion of surface waters to damages caused by overflow held prejudicial error.

In an action for damages for unlawful diversion of surface water, refusal of a special issue limiting plaintiff's recovery to damages by overflow as authorized by Act May 29, 1915 (1st Called Sess.) c. 7, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), was prejudicial error, in view of error in another special issue

not limiting plaintiff's damages to those caused by overflow.

6. **Waters and water courses** ⚖☞126(3)—Evidence as to overflow of surface waters held sufficient for jury.

Evidence of defendant's acts causing overflow of plaintiff's property by surface waters, in violation of Act May 29, 1915 (1st Called Sess.) c. 7, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), held sufficient to go to jury.

Appeal from District Court, Cooke County.

Action by Sarah E. Howard and husband against the North Texas Compress & Warehouse Company. Judgment for plaintiffs, and defendant appeals. Reversed, and remanded for new trial.

Superseding former opinion, 265 S. W. 1067.

W. O. Davis, of Gainesville, for appellant.
Garnett & Garnett, of Gainesville, for appellees.

McCLENDON, C. J. This was an action for damages for unlawfully diverting the natural flow of surface waters. The suit was brought by Sarah E. Howard and her husband, Robert Howard, against North Texas Compress & Warehouse Company, which we will refer to for convenience as the compress company. Plaintiffs recovered in the court below upon a special issue verdict, and the compress company has appealed.

The uncontradicted evidence in the case shows the following: The property of the compress company was about 900 feet long, bounded on the east by a railway company's right of way, on the north by Haight street, on the west by Compress or Moran street, and on the south by Belcher street. Mrs. Howard owned a lot upon which she had her residence, which had an 80-foot frontage on the west side of Compress street; her north line being about 200 feet south of Haight street and abutting on an alley extending west from Compress street. The property comprising Compress street and that east and west of it had formerly been sold off to various parties, and a strip 25 feet wide extending from Haight to Belcher streets had been left ostensibly for street purposes. Immediately to the east of this strip was another strip some 25 feet wide, the legal title to which was in the compress company. The surface of the ground in its natural state sloped from the northwest to the southeast, so that surface waters would naturally drain in the latter direction across the compress company's property. Prior to 1915, that company had erected, on posts set in the ground, a platform which covered its entire property with the exception of the 25-foot strip which abutted on Compress Street. This strip was left vacant for the purpose of loading and unloading from this platform. In 1914, the

---

⚖☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

compress company erected sheds over the entire platform with the exception of a strip about 20 feet wide on the west side. In constructing these sheds the water from the roof was drained to the west, and discharged through down spouts at their west end. The first of these down spouts was about 62 feet south of Haight street, and the others averaged about 81 feet south of the next spout to the north. Beginning at Haight street, these down spouts were numbered 1, 2, 3, etc. The third down spout was practically opposite the front gate of appellees' home. In addition the compress company erected a brick wall about 347 feet long at the west end of these sheds, the north end of which wall was about 317 feet south of Haight street. In April, 1920, the compress company, with permission of the city authorities, constructed concrete gutters extending from these down spouts, except down spouts 1, 2, and 3, which carried the water from the respective down spouts west two-thirds of the way across Compress street. Plaintiffs in their petition alleged a diversion and obstruction of the natural flow of the water by reason of the compress buildings, down spouts, concrete gutters, and that the compress company had raised the level of the ground to the west of their buildings or platforms so as to throw the water back into Compress street and across their property. The damages which they claimed were alleged to have accrued since October 12, 1918.

The evidence of plaintiffs was to the effect that prior to about October 12, 1918, there was no disturbance of the natural flow of surface waters deleterious to their interests; but that, from that time forward, their property and the street in front of it were constantly flooded in seasons of heavy rains as the result of filling in on the compress property by that company, which obstructed the natural flow of the surface water to the southeast, and threw the water from the down spouts west into Compress street and upon their property. Whether the construction of the concrete gutters affected their property is not entirely clear from the evidence. For the purposes of this appeal, we think a more detailed statement of the pleadings and evidence is unnecessary.

The cause was submitted to the jury on eight special issues, four of which, the first, third, fifth, and seventh, called for findings of damage in various particulars. The first, third, and seventh issues were answered in favor of the compress company, which made it unnecessary to answer the second, fourth, and eighth. The fifth and sixth special issues and their answers, which were favorable to appellees, follow:

"Question No. 5. Do you find from a preponderance of the evidence that plaintiffs or either of them suffered any discomfort, inconvenience, and annoyance as a result of the discharge of the waters from the roof of the sheds of the defendant into Moran or Compress street, or by the obstruction, if any, of any surface waters by defendant, which would naturally have flowed to the east or southeast across said street, and the conditions, if any, caused thereby? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 6. If you answer the foregoing question 'yes,' then find from the evidence and state what amount of damage, if any, they each suffered on account thereof. Answer: Sarah E. Howard, $650; Robert Howard, $100."

The compress company excepted to the fifth special issue, upon the express ground that it did not distinguish between things done prior to August 25, 1915, when the common law was in force as to surface waters, and things done subsequent to that date, and therefore made the act abolishing the common law retroactive and unconstitutional, and that the effect of the issue was to charge that the buildings and down spouts which were lawfully constructed under existing law could be now held to be wrongful, thus rendering the law retroactive and void under the Constitution. The compress company also requested a special charge, instructing the jury that, in considering the issues submitted to them, they should disregard any injury, if any, resulting to appellees by reason of the operation of the pipes, down spouts, and elbows, and merely consider such injuries, if any, as resulted to plaintiffs from October 12, 1918, to October 12, 1920, from things done by the defendant after August 25, 1915. In addition, the compress company requested a number of special issues limiting the amount of recovery to damages resulting from acts of defendant committed after August 25, 1915. Appellant also requested submission of the following special issue:

"(1) Did the defendant, by anything done by it since August 25, 1915, impede the flow of surface water and cause it to flow back upon the land of the plaintiffs and stand thereon to an extent to inconvenience and discommode the plaintiffs in the use of their property?"

We have reached the conclusion that the particular objections to the fifth special issue were properly overruled, and that the special charges above referred to were properly refused; but that error was committed in refusing appellant's first special issue.

[1, 2] Under the common law as recognized in this state prior to the Act of 1915 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), the owner of real property had the right to repel surface waters from his premises without incurring liability to adjacent property owners. Gross v. Lampasas, 74 Tex. 197, 11 S. W. 1086; Barnett v. Irrigation Co., 98 Tex. 355, 83 S. W. 801, 107 Am. St. Rep. 636; Walenta v. Wolter (Tex. Civ. App.) 186 S. W. 873 (writ of error refused), and other cases.

However, under the common law a land-

owner did not have the right to collect surface waters falling upon his own land, and discharge them upon lands which, by nature, they would never reach. This principle is also recognized in this state. Wilkerson v. Garrett (Tex. Civ. App.) 229 S. W. 666 (writ of error refused), and authorities there cited.

An affirmative answer to the fifth special issue would be supported by a finding of discomfort, etc., from either of two causes: First a discharge of waters from the sheds into Compress street; or, second, an obstruction of the waters which would naturally have flowed across that street. Under the common law, the first would be actionable, but the second would not. The evidence, however, did not show that there was any obstruction or diversion of surface waters by anything done prior to 1915 which had any effect on plaintiffs' rights or interest, but, on the contrary, negatived such finding. The testimony in support of recovery all was to the effect that the injurious consequences produced, whether in the street or on plaintiff's property, resulted from filling in on the compress property, beginning early in 1918, the twofold effect of which was to impede the flow of surface waters falling to the west and northwest of Compress street, and to discharge the waters from the compress sheds into Compress street, which latter had previously flowed southeast under the platform.

The Act of May 29, 1915, which became effective August 25, 1915, and is now embodied in Vernon's Statutes, 1918 Supplement, as article 5011t, provides:

"That it shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this state or to permit a diversion thereof caused by him to continue after the passage of this act, or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this act, in such a manner as to damage the property of another, by the overflow of said water so diverted or impounded, and that in all such cases the injured party shall have remedies in both law and equity, including damages occasioned thereby."

[3] In so far as this act may by its language apply to structures lawfully erected prior to and in existence at the time that act went into effect, if it be susceptible of that construction at all, it was violative of that provision of our Constitution inhibiting the passage of retroactive laws. This was the holding in Gaertner v. Stolle (Tex. Civ. App.) 238 S. W. 252, in which a writ of error was refused. But with that question we have not here to deal, for the reasons above stated.

[4] Article 5011t above quoted from makes it unlawful to impound or divert the natural flow of surface waters "in such a manner as to damage the property of another, by the overflow of said water so diverted or im-

pounded." This statute, clearly from its express language, only inhibits impounding and diversion of surface water in such a manner as to damage the property of another by overflow; and, in so far as the injuries complained of must be rested upon a violation of this statute, recovery is limited to property damage caused by overflow.

[5] Appellant's special issue clearly presents this phase of the case and it was error to refuse it. This is especially true in view of the fact that the fifth special issue was affirmatively erroneous in that, in so far as it allowed recovery for "obstruction, if any, of any surface waters by defendant, which would naturally have flowed to the east or southeast across said street, and the conditions, if any, caused thereby," it did not limit recovery to those injuries which the statute inhibits and affords relief against, namely, "damage to the property of another, by the overflow of said waters."

The remarks of appellees' counsel in his closing speech to the jury, which appellant complained of, were clearly improper as held by the trial court, and should not be repeated upon another trial of the case.

[6] The evidence was sufficient to warrant submission of the case to a jury, and all assignments of error questioning its sufficiency are overruled. In view of another trial, we refrain from discussing the testimony.

For the error pointed out, the trial court's judgment is reversed, and the cause remanded to that court for a new trial.

Reversed and remanded.