KOUGL, Appellant, v. CURRY et al., Respondents

(44 N. W.2d 114)

(File No. 9104. Opinion filed September 22, 1950)

Donley & Crill, Elk Point, for Appellant.
A. J. Beck, Elk Point, for Respondents.

SMITH, J. The right of the defendants to maintain a dike or levee along the boundary line between forty-acre tracts owned respectively by the parties, and thereby to obstruct the natural drainage of surface waters from plaintiff's tract, was placed in issue by this action. The trial court concluded that the defendants had acquired a prescriptive right to maintain the levee and thereby to free their property from the flow of surface waters from plaintiff's property. Judgment was entered for defendants and plaintiff has appealed.

Plaintiff is the owner of the Northwest Quarter (NW¼) of Section Seven (7), Township Ninety-one (91), North, Range Forty-nine (49), West of the 5th P.M., in Union County, South Dakota. Defendants are the owners of the adjoining Southwest Quarter (SW¼) of the Northeast Quarter (NE¼) of said section. These tracts are almost level, but nature provided for drainage of surface waters to the east and south from plaintiff's property to defendants' property down a general slight grade.

A drainage district benefiting the described properties was organized prior to 1915, and a large drainage ditch carrying surface waters to the Big Sioux River had been constructed along a course which touched the northeast corner of the described section. Thereafter, to facilitate the drainage of all of section 7 the owners thereof, including the predecessors in interest of plaintiff and defendants, respectively, entered into an agreement in writing, pursuant to which in 1916 they constructed a substantial embankment along the quarter line through the center of said section from north to south, and excavated ditches on both sides thereof to carry water to the north and to the south to the section lines and thence to the big ditch.

Neither party produced a copy of the above mentioned agreement, and secondary evidence of its provisions was not offered.

The described embankment remained in its original state from 1916 to 1944, during which time the right of defendants and their predecessors to maintain the same was in no manner questioned by plaintiff or his predecessors in interest. In 1944, on advice of counsel, plaintiff removed

the approximately one-half of the embankment resting on the Southeast Quarter (SE¼) of the Northwest Quarter (NW¼) of Section 7 and made some openings in the half of the embankment resting on defendants' forty-acre tract in an effort to provide drainage for water then impounded on plaintiff's property. The defendants promptly closed the openings in their half of the embankment.

Thereafter the parties orally agreed upon a compromise which would provide plaintiff with drainage to the east by a ditch extending along the north line of defendants' property. Pursuant to that agreement defendants and others constructed a ditch along the line described but did not carry the same far enough west to pierce the embankment. Differences which arose over the manner and extent of plaintiff's contributions toward this construction, and with reference to the responsibility for connecting the ditch with plaintiff's property prevented the consummation of the outlined compromise, and this action was brought by plaintiff to force defendants to level their half of the embankment and thus to restore the natural drainage to the east and south. Among other defenses, the defendants pleaded twenty years' adverse maintenance of the embankment as the basis of a prescriptive right to continue to refuse to receive the flow of surface waters from plaintiff's tract.

In Thompson v. Andrews, 39 S.D. 477, 165 N.W. 9, 12, this court said, "The law of this state and of the territory from which this state was created has been at all times based on the rule of the civil law, * * * that rule which recognizes that the lower property is burdened with an easement under which the owner of the upper property may discharge surface waters over such lower property through such channels as nature has provided." And see Quinn v. Chicago, M. & St. P. Ry., 23 S.D. 126, 120 N.W. 884, 22 L.R. A.,N.S., 789; Johnson v. Metropolitan Life Ins. Co., 71 S.D. 155, 22 N.W.2d 737; and LaFleur v. Kolda, 71 S.D. 162, 22 N.W.2d 741.

The evidence does not make it clear that the natural drainage from plaintiff's property to defendants' property is through a watercourse or watercourses as that term is defined in Thompson v. Andrews, supra. The drainage may

be of diffused or unregulated surface waters. It has been stated that under the civil law the lower proprietor is not required to receive such water because "there is no such servitude unless there is a regulated course in which the water is flowing." III Farnham, Waters and Water Rights. § 889a, p. 2587 (1904) and § 891, p. 2619. But see "Interferences with Surface Waters," 24 Minn.L.Rev. 891 at 926, Note 163. The case was tried below under the assumption that defendants' property was originally subject to a servitude to receive surface waters from plaintiff's property. Without deciding the point we accept that assumption.

As indicated, it is undisputed that the levee was constructed as a part of a drainage system. The plan probably did not contemplate the turning of surface waters back on to plaintiff's dominant tenement, but as the ditch along the west side of the embankment filled up, water has been intermittently impounded on the upper property. One of the principal functions of the embankment was to relieve the defendants' property of the burden of receiving surface water from plaintiff's property, and defendants' half of it has stood there as a constant, open and notorious barrier to the natural flow of that water since 1916.

The accepted doctrine is that the right to be free from the flow of surface waters may be acquired by the servient tenement by prescription. III Farnham, Waters and Water Rights, (1904) § 902, p. 2635; 67 C.J., Waters, § 310, p. 886; Zerban v. Eidmann, 258 Ill. 486, 101 N.E. 925; Mauvaisterre Drainage & Levee District v. Wabash Ry. Co., 299 Ill. 299, 132 N.E. 559, 22 A.L.R. 944; Matteson v. Tucker, 131 Iowa 511, 107 N.W. 600; and Davis v. Louisville & N. R. Co., 147 Tenn. 1, 244 S.W. 483. In our opinion the principle which governs the extinguishment of an easement should control in determining whether such a natural servitude is extinguished. That principle is stated in the Restatement, Property, Division V, Servitudes, § 506, Prescription, as follows: "An easement is extinguished by a use of the servient tenement by the possessor of it which would be privileged if, and only if, the easement did not exist, provided (a) the use is adverse as to the owner of the easement and (b) the adverse use is, for the period of prescription, continuous

and uninterrupted." The period of prescription in this jurisdiction is twenty years. SDC 51.1102; Shearer v. Hutterische Bruder Gemeinde, 28 S.D. 509, 134 N.W. 63.

■ The argument and brief of plaintiff does not labor the foregoing points. Grounded upon the holding of this court in First Church of Christ, Scientist, v. Revell, 68 S.D. 377, 2 N.W.2d 674, that a use which is permissive is not adverse and will not ripen into a prescriptive right, and upon other similar holdings, Cf. 28 C.J.S., Easements, § 14d, p. 655, it is contended that the levee was constructed by agreement and hence existed by permission until 1944. We think that position is not maintainable under this record.

It is admitted that this levee was constructed pursuant to some character of written agreement between the several owners of property in the described section. The nature of that agreement is not evidenced. For aught that appears in this record the described writing may have created a right in defendants' predecessor in interest to maintain this levee as a part of a permanent system of drainage. A use under such an agreement would not be in any sense in subordination to the proprietor of the dominant tenement and therefore would not be permissive. Cf. Restatement, (1944) Property, Division V, Servitudes, § 458, Comment to Clause (a).

For the same reason we conclude that the fact that the embankment was jointly constructed pursuant to a written agreement fails to evidence a permissive use by the proprietors of the servient tenement. It is just as probable that joint construction and maintenance of a permanent system of drainage was provided for as a matter of right by the written agreement of the original parties, as it is that the writing provided for a use in subordination to the proprietor of the upper property.

■ ■ The prevailing rule is that where a claimant has shown an open, continued and unmolested use of land for a period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under a claim of right. The owner of the servient estate, in order to avoid the acquisition of an easement by prescription, has the burden of rebutting this presumption by showing that the use was

permissive. 17 Am.Jur., Easements, § 72, p. 981; Anno. 170 A.L.R. 778. We can discern no reason for failing to apply these principles of the law of prescription in determining whether a servitude has been extinguished by that doctrine. And, as we have indicated, we do not think that a bare showing that a use is made pursuant to a written agreement, without any evidence of its terms, is sufficient to rebut the presumption that the use is and has been adverse under a claim of right.

■ Plaintiff points out that the surface water was actually withheld from the lower property until 1944 by his half of the embankment, and that as the upper proprietor was within his rights in so withholding such water, it follows he was not required to exercise the natural right of drainage in order to preserve it. It is the use of the servient tenement which we deem to be of significance in disposing of the issue here. That use was not only constant, open and notorious; it was wholly and completely inconsistent with the right of the proprietors of the dominant tenement to exercise the assumed right in that it interposed a solid barrier to such drainage. That use is presumed to be under a claim of right, and therefore, adverse, and there is a complete absence of evidence to rebut that presumption. Such a showing would warrant a holding that an easement had been extinguished. Cf. Anno. 98 A.L.R. 1291; 66 A.L.R. 1099; and 1 A.L.R. 884, and as we have indicated, in the interest of repose, we are of the opinion that the same principles should be applied in dealing with this natural servitude. We hold that the assumed natural servitude has been extinguished by prescription, and that the maintenance of the levee is lawful.

We have not overlooked the contention that a written disclaimer of all right, title, and interest in the dominant tenement by defendants' predecessor in interest constituted a fatal interruption to the adverse character of the obstruction to the described drainage.

These are the facts. Defendants' father, John C. Curry, had occupied plaintiff's property under a lease. In 1924, while John C. Curry was the owner of defendant's property, he executed and delivered the following affidavit, viz.,

"John C. Curry, being first duly sworn on his oath deposes and says, that he now resides at Sioux City, Iowa, that for more than forty years prior to the year 1923, he resided at Elk Point, County of Union, State of South Dakota, that during the years 1913, 1914 and 1915 he farmed and tilled the following described real property situated in the County of Union, State of South Dakota, to-wit: Lot Two and the South Half of Lot One Northwest Quarter of Section Seven, in Township Ninety-one North, of Range Forty-nine, West of the 5th P.M., that the lease dated June 10th, 1914, mentioned in that certain deed of said real property made by Clarence Darnell and wife, to Henry Blessman dated March 1st, 1915, and duly recorded in the office of the Register of Deeds of Union County, State of South Dakota, on the 10th day of March, 1915, in Book 33 of Deeds on page 449 was the lease under which I farmed and till said real property, that said lease expired on the 1st day of March, 1916, and that on the 1st day of March, 1916, I vacated the said real property and have never since been in possession of the same, that all my rights under said lease expired on said 1st day of March, 1916, and that I now claim no right, title, estate interest in or lien or encumbrance upon the aforesaid real property."

■ The principle involved in this contention has been stated as follow: "Where the person using the easement has, within the prescriptive period, acknowledged a superior right in the other party, such admission is fatal to his claim, even though the admission was made by mistake." 28 C.J.S., Easements, § 13f, p. 651. Cf. 2 C.J.S. Adverse Possession, § 149, p. 711.

■ In commenting upon the requirement of the law of prescription that the adverse use be continuous in Restatement, (1944) Property, Div. V, Servitudes, § 459, Comment Sub. (1)b., it is said, "* * * The requirement means that there be no break in the essential attitude of mind required for adverse use rather than that the use be constant. If such a break occurs, as where there is submission to the possessor or an abandonment of a claim under which a use is made, there occurs a break in the continuity of the adverse use even though there is no cessation of use. * * *"

■ The foregoing principles deal with the creation of an easement by prescription. We agree with the authors of the Restatement of Property that some allowances must be made in applying these principles to the extinguishment of an easement or servitude by prescription. They have said, "An easement is acquired by prescription through a use of land in the possession of another. An easement is extinguished by prescription through the use made by the possessor of the servient tenement of land in his own possession. In either case, however, the use made must be a use inconsistent with the interest of the one against whom it is claimed to be adverse. This being true, after allowance is made for the necessary differences in fact in the two situations, the essentials in the creation and in the extinguishment of easements by prescription are not fundamentally different. In both cases the use must be adverse, and the adverse use must be, for the period of prescription, continuous and uninterrupted." Restatement (1944), Property, Div. V, Servitudes, § 506, Comment b.

■ Whether the quoted exhibit evidences a change in the adverse state of mind essential to the operation of the doctrine of prescription is the question. The trial court gave a negative answer to that question and found that the purpose of the affidavit was to release any right or interest created by the lease described therein. We hold that the stated principle is not invoked by the facts we have recited.

At the moment the affivadit was made the father was maintaining an obvious barrier to the exercise of the assumed natural right of drainage appurtenant to the dominant property. That use was of his own premises and his only purpose was to free his own property from any flow of surface waters from the upper property. He was not attempting to make a use of the upper property. It was thought that the system would merely divert the surface waters along a different course. As we have indicated, it was then presumed that such use of his own property was under a claim of right and hence, adverse. In view of the character of that use, and of the fact that the affidavit makes no mention of the use or of the assumed right it invaded, and of the further fact that the affidavit was so obviously exe-

cuted to provide assurance against claims founded on the described lease and the father's occupancy of the property now owned by plaintiff, we think reason will not support an interpretation of the affidavit as a disclaimer of the right to continue the described use of affiant's own land, or as an admission that such use was being made in subordination to the proprietors of the land now held by plaintiff. Such was not the actual intention of the father and of those persons he accommodated by executing the affidavit, and, in our opinion, justice does not require such a strained and technical employment of the affidavit for the benefit of subsequent purchasers.

Other contentions made by appellant have been considered but are not deemed to merit discussion.

The judgment of the trial court is affirmed.

All the Judges concur.