In the Matter of the Application by ADELINE ASCHER OPLADEN, Petitioner, for a Determination of the Damages, etc., against TOWN OF ISLIP, COUNTY OF SUFFOLK, Respondent.

Supreme Court, Special Term, Suffolk County, October 30, 1939.

*Frederick W. Tuck, Jr.* [*John R. Vunk* of counsel], for the petitioner.

*Roy B. Davis,* for the town of Islip.

HALLINAN, J. This is a proceeding, pursuant to section 197 of the Highway Law, for the appointment of three commissioners to ascertain and determine petitioner's damages resulting from a change of grade to the highway known as South Country road or Middle

road, in the town of Islip, extending from Sayville to Bayport, Suffolk county, N. Y.

Petitioner's verified claim for damages was filed with the town clerk on June 16, 1937. By respondent's answer, verified January 4, 1938, the material allegations of the petition, verified November 15, 1937, were denied. Said answer also contains three affirmative defenses. The first alleges " that at the time of the repairing, grading and macadamizing * * * and for some time prior thereto, the said South Country Road or Middle Road was not a town highway." The second alleges that at the times referred to in the petition the highway in question was not macadamized from curb to curb, as required by section 197 of the Highway Law, so as to enable petitioner to recover damages. The third alleges " that at the time of the repairing, grading and macadamizing * * * South Country Road or Middle Road was a county highway." Thereafter the town moved for judgment on the pleadings. This motion was denied by Special Term (*Matter of Opladen*, N. Y. L. J. Oct. 20, 1938, p. 1221) and no appeal from the order thereon was ever taken.

According to the memoranda submitted by the respective parties after the trial of the issues raised by the pleadings herein, the following questions are presented:

(1) The effect of the order denying judgment on the pleadings.

(2) Whether petitioner's claim was filed within the time limited by section 197 of the Highway Law, that is, " within sixty days after such change of grade is effected."

(3) Whether, notwithstanding an affirmative answer to issue No. "(2)," the petition must nevertheless be dismissed by reason of an alleged changed status of South Country road or Middle road, from a town to a county highway.

(1) The court is of the opinion that the decision of the Special Term denying the town's motion for judgment on the pleadings, established, as the law of the case, the sufficiency of petitioner's notice of claim and petition, and nothing else. In its memorandum the learned Special Term referred specifically to the timeliness of the filing of petitioner's claim for damages on the 16th of June, 1937, in relation to the allegation in the notice and petition that the work was completed on the 25th of May, 1937. In other words, assuming that the work was completed within the meaning of section 197 of the Highway Law, on the 25th of May, 1937, as pleaded, the filing of a notice of claim on June 16, 1937, was timely; but the issues of fact raised by the denials, in the answer, of petitioner's allegations as to the completion date, etc., still remained for determination at the trial.

(2) Plans for the "Proposed Reconstruction of Brown's Creek Bridge, Sayville, Suffolk County, New York, Town of Islip," were approved on September 8, 1936, by the superintendent of highways.

At a meeting of the town board of Islip, held on October 13, 1936, the following resolution was duly adopted:

"*Resolved* that bids for the construction of the approaches at Brown's Creek, Bayport, be awarded to the lowest bidder that complied with the bid requirements, *i. e.*, E. L. North for the sum of $17,924.50."

Pursuant to such resolution, a contract was entered into by the respondent with E. L. North, of Islip, on October 13, 1936, for the construction of said approaches at a total cost of $17,924.50. Page 3 of said contract contains the breakdown of the cost into the following seventeen units:

"Clearing & Grubbing
Earth Excavation
Unclassified Excavation
Borrow
Preparing Fine Grade
Trimming Shoulders
Vitrified Clay Pipe–12" Diam.
Reinf. Conc. Pipe-Class 'A'–12" Diam.
Portland Cement.
Class 'C' Concrete
Metal Reinf. for Conc. Pavement
Misc. Iron & Steel
Concrete Guide Posts
Cement Conc. Pav't 1:2:3-1/2 Mix
Concrete Sidewalks
Concrete Curb
Breaking Up Concrete Only."

According to the testimony, the fill or earth was dredged from the creek and placed over the right of way during November and December, 1936, where it remained until the 17th of March, 1937, when cement or concrete for the highway was poured and allowed to set until the 27th of March, 1937, at which time traffic was resumed; but the work called for by the contract in question was not completed until the 19th of May, 1937, and it was not until the 25th of May, 1937, that the town board adopted a resolution "approving the work done * * * and that the final payment due on the contract be paid." The contractor was paid in five different installments as follows, based on as many "estimates" of the work completed, submitted by him:

| Date of Estimate | Date of Check | Amount |
|---|---|---|
| January 7, 1937 | January 11, 1937 | $2,448 72 |
| February 23, 1937 | February 24, 1937 | 2,115 00 |
| March 23, 1937 | March 24, 1937 | 7,418 88 |
| April 19, 1937 | April 20, 1937 | 3,247 20 |
| May 19, 1937 | May 28, 1937 | 2,694 70 |
| | Total | $17,924 50 |

On page 6 of the brief dated July 6, 1939, submitted on behalf of the town, it is contended that only the sum of approximately $2,600 (the fifth payment) out of a total contract price aggregating some $17,000 " was paid *after* the highway had been opened to traffic, to wit, March 27, 1937." This is obviously an error, for, in addition to the final payment of $2,694.70 pursuant to the final estimate of May 19, 1937, the sum of $3,247.20 was paid on April 20, 1937, pursuant to the estimate of April 19, 1937. Thus, a total of $5,941.90, or about thirty per cent of the full cost of the job, was paid *after* March 27, 1937, the date when traffic was resumed.

The work embraced by the fourth and fifth estimates consisted of excavating, preparing fine grade, trimming shoulders, putting in concrete curbing, laying concrete sidewalks, putting in catch basins and guide posts, and breaking up old concrete.

The town urges that whatever damages occurred by reason of the change in grade, were suffered by the petitioner between December, 1936, when the work was started, and March 27, 1937, when traffic was resumed on the highway, and that whatever work was done subsequent to that event has no bearing on the time when " change of grade is effected."

With this contention the court is not in accord. The work performed by the contractor was the uninterrupted performance of a contract " for the construction of 1,320 linear feet of reinforced concrete pavement on Middle Road at Browns Creek, Sayville, Town of Islip, County of Suffolk, New York." That project was not completed until May 19, 1937, and the town board did not approve the work done and direct final payment on the contract until May 25, 1937. The particular work that was performed by the contractor after traffic was resumed is inseparable from the entire project and is part and parcel of the grading contract. It was not a mere improvement of the roadway, as was involved in *Stenson* v, *City of Mount Vernon* (104 App. Div. 17) and *Matter of Stuart* v. *Village of Lynbrook* (169 Misc. 167).

The clause " within sixty days after such change of grade is effected," as contained in section 197 of the Highway Law, is pre-

cisely the same as that which was considered by the Appellate Division, this department, in *Matter of Phipps* v. *Village of North Pelham* (61 App. Div. 442) in connection with section 159 of the Village Law. In construing the word " effected " the court said (at pp. 445, 446): " it is here used in the sense of ' completed,' and that the change of grade for which the injured party may claim damages is not effected until it is completed; until the village has taken some action to indicate that it has closed the work in connection with the improvement under way. The best evidence of this intention on the part of the village would seem to be the final grading and the placing of a permanent sidewalk; until that time the petitioner, in the absence of other evidence, would not be bound to assume that the change of grade contemplated had been effected. * * * until the grade is effected, until the improvement is completed in accordance with the plans, there would be no foundation on which to predicate the benefits to the petitioner."

Similarly, in the instant case, the grade was not " effected " until the improvement was completed as called for by the plans and the contract.

The court, therefore, holds that the notice of claim filed by the petitioner on June 16, 1937, was presented within sixty days from the time the change of grade involved was effected or completed.

(3) Finally, it is urged by the town that notwithstanding a finding that the petitioner's claim for damages was timely filed, the petition must nevertheless be dismissed by reason of the fact that between January 2, 1937, and February 10, 1937, the road was transferred to the county of Suffolk, so that at the time that the change of grade was effected the town no longer owned it.

While it is true that the board of supervisors of the county of Suffolk passed a resolution dated January 2, 1937, to add the road to the county highway system, and same was approved by the Division of Highways of the State Department of Public Works on February 10, 1937, as appears by the certification of said Department dated November 23, 1938, the map showing the change concededly was not filed in the county clerk's office, as required by section 115 of the Highway Law, until November, 1938.

It cannot be disputed that at the time of the adoption of the resolution awarding the contract, the town had exclusive jurisdiction and control of the road and the exclusive power to authorize and achieve the change of grade. It not only initiated the work, but carried it through to completion. Notwithstanding the resolution of the county board of supervisors, dated January 2, 1937, and the approval of the State Department of Public Works on

February 10, 1937, it continued to exercise control; it supervised, the work, checked the contractor's estimates, paid the amounts. called for by such estimates out of its own highway funds, and, finally, on May 25, 1937, its town board adopted the resolution approving the work done by the contractor and authorizing final payment.

Thus, during the entire course of the project, the respondent held itself out to the public and to the petitioner as the party from whom redress might be sought for damages caused by the change of grade it thus carried through. It cannot now avoid the obligation imposed by the statute.

Accordingly, the relief prayed for in the petition will be granted, with costs. Proceed on notice.