LA FLEUR, et al, Appellants, v. KOLDA, et al, Respondents

(22 N. W.2d 741.)

(File No. 8811. Opinion filed May 6, 1946.)
Rehearing Denied June 24, 1946.

**Alan Bogue** and **Everett A. Bogue,** both Vermillion, for Appellants.

**Lars A. Bruce,** State's Atty., of Yankton, for Respondents Frank W. Smith and Yankton County, S. D.

**H. A. Doyle** and **Frank Biegelmeier,** both of Yankton, for Respondents Frank B. Kolda, Charles Mikolasek, and Stanley Mikolasek.

PER CURIAM.

The plaintiffs seek to enjoin the maintenance of ditches in the highway through which surface waters are drained from a basin or pond located on the highway and on the properties of two of the individual defendants into a larger

basin or .pond located in part upon the property of one of the plaintiffs. The trial court entered judgment for defendants and plaintiffs have appealed.

The properties described by the evidence are on opposite sides of a north and south highway in Yankton County. At the north on the east side of the highway is a quarter owned by defendant Frank Kolda. Immediately south of the Kolda quarter is a quarter owned by one Albert Mueller, a brother of the plaintiffs. Immediately south of the Albert Mueller quarter is an 80-acre tract owned by plaintiff La-Fleur. On the west. side of the highway and immediately west of the Kolda quarter is a quarter owned by defendant Charley Mikolasek. Immediately south of that quarter is a quarter owned by one Wm. J. Fantle. Immediately south of the Fantle quarter is a quarter owned by one Jake Bierle. The slope of the entire area is toward the south or slightly east of south.

The drainage of which plaintiffs complain is of a basin of about 10 acres located on the properties of the defendants Mikolasek and Kolda. This basin is bisected by the highway. For convenience we will refer to it as the Kolda pond.

A second basin or pond of about 15 acres is located just southwest of the Kolda basin in the northwest corner of the Fantle quarter. It will be referred to as the Fantle pond.

A third basin of upwards of 40 acres is located at the four corners of the properties of Fantle, Albert Mueller, Bierle, and plaintiff LaFleur. Approximately 15 acres of this lake is on the northwest corner of the plaintiff LaFleur 80. It is known as the north Mueller pond. This pond receives the drainage about which plaintiffs complain.

A fourth basin of about 15 acres is located just south of the last described basin and is wholly upon the property of plaintiff LaFleur. It receive's drainage by seepage from the north Mueller pond. It is known as the south Mueller pond.

These ponds are all of the same character. In periods of heavy precipitation they are full, and at other·times they are dry and produce hay. The Mueller ponds have no outlet.

Prior to 1930 north and south traffic followed a trail around to the west of the Kolda pond on the Mikolasek property. A request was made of the county for a graded road along the section line. Those in authority considered two types of grade, viz.,(1) a grade above any probable water level; (2) a lower grade protected from water by adequate drainage ditches. To secure the benefits of the drainage and to assure the building of the desired highway defendants Kolda and Mikolasek each contributed $100 to the second type of construction. The grade with· a substantial drainage ditch, 3 to 3½ feet in depth, on each side thereof, was constructed in 1930.

In its natural state there was no break in the rim of the Kolda pond.˙ Although the area as a whole sloped to the south, the ground immediately to the south of this basin was 3 to 4 feet higher than its bottom. Only one witness testified that he had seen it overflow. There was some drainage from it by seepage to the south. The described ditches cut through the south rim of this basin and drained water therefrom which could only have escaped by percolation or seepage. The water so drained was carried down the highway into the Fantle basin, and through that basin to the southeast into the north Mueller pond.

The trial court in substance found that the ditches were located on the lands of the defendants Mikolasek and Kolda; that they followed the natural course of drainage for the basin and the area; and that they discharged the surface waters into a natural depression or water course. In addition, the court found or concluded "that this watershed is surrounded by a rim of hills or much higher land and the said north Mueller lake is the receptacle designated by nature as a final resting place for the surplus water in said watershed". All of these findings are assailed by plaintiffs. ·For the purposes of this opinion, and without detailing the evidence upon which they rest, we assume they are sufficiently supported by the evidence. The point we are to consider is whether in such circumstances the·property of plaintiff LaFleur is burdened with a natural servitude to recieve the described waters from the Kolda basin.

■ The drainage is by the county for highway purposes. The right to drain such a pond over or onto lower property of another, without compensation for the privilege, is the same whether the upper land is the farm of an individual or a public highway. Graham v. Keene, 143 Ill. 425, 32 N. E. 180; II Farnham, Water and Water Rights, § 186; 27 R. C. L. 1155. Therefore, we deal with the issue as though the ditches were installed and maintained by the defendants Kolda and Mikolasek.

■ This jurisdiction is committed to the principle that lower property is burdened with a natural servitude to receive surface waters from upper property, through such channels as nature has provided, and to the further principle that in the reasonable use of his property the upper owner may artifically drain the same of surface waters along the general course of natural drainage for the area drained, by constructing open or covered drains discharging the water on his own property into some natural watercourse or into a natural depression whereby the water will be carried into some natural watercourse across the servient premises, and such drains may hasten or increase the natural flow of surface water by cutting the rim of a pond or basin. SDC 61.1031. Thompson v. Andrews, 39 S. D. 477, 165 N. W. 9; Johnson v. Metropolitan Life Ins. Co., 71 S. D. 155, 22 N. W.2 737.

The foregoing principles were rationalized in Thompson v. Andrews, supra, as follows [39 S. D. 477, 165 N. W. 12]: "The rights acquired and the burdens undertaken by those who settle upon or purchase lands in a particular locality are such rights and burdens as are consonant with the just rights and burdens of those people who may become possessed of other lands in same locality. These rights and burdens must, from the very nature of things, depend upon the purposes for which nature has apparently fitted and intended such lands. Nothing is better settled than that the law of easements is founded upon nature's laws and nature's works. We must therefore ask what rights and burdens, consonant with good neighborliness and with the reasonable furtherance of husbandry, should be held to attach to

our agricultural lands? Certainly every person who acquires lands normally fitted for cultivation should have the right to render them permanently fitted therefor if he can do so without injustice to another; therefore one who acquires lands, over which a water course passes through which upper lands normally dry can be drained in accordance with 'the general course of natural drainage,' should be held to have acquired same knowing that good neighborliness and the common welfare required him to permit of the drainage of such upper lands through such water course conditioned only that such drainage be accomplished without unreasonable injury to his land."

 The express words of the opinion in Mishler v. Peterson, 40 S. D. 183, 166 N. W. 640, extended the right of artificial drainage of surface water so as to permit the owner of the upper dominant property to drain a land-locked basin located on his property into a land-locked basin on the servient property, by constructing drains wholly upon his property, provided the drains follow the course of natural drainage and empty into a natural depression or water course. The conclusions of the trial court were based upon that opinion.

To require those who settled these prairies to take the land subject to the burdens ordained by nature seems wholly reasonable. Thus on principle the lower owner cannot complain if his basin is filled by natural drainage from upper land. And we think it is not unsound to reason that the settler on lower land must have anticipated and understood that the watercourse across his land must carry an added burden of water as an incident of the improvement and reasonable use of the upper property. But such reasoning, in our opinion, supplies no support for a rule which permits the upper owner to transfer the burdens imposed by nature on his land to that of the lower owner. To artificially drain a land-locked basin on the upper estate to a like basin on the lower estate is to relieve the upper estate of a burden at the expense of the lower estate. Such a rule could not have been anticipated by either the settler of the upper or the lower estate. It is unjust and unsound. It

gains no support from the civil law rule, which obtains in this jurisdiction, or from more modern authority. III Farnham, Water and Water Rights, §§ 889 and 894. The rule of Mishler v. Peterson, supra, is expressly overruled. In so repudiating the holding of that case, we are not unmindful of the rule of stare decises. We have concluded that more harm and injustice will result from the rule than from its repudiation. Brekke v. Crew, 43 S. D. 106, 178 N. W. 146.

■ The drainage is by the county for highway purposes. Such a taking or damaging of property without prior compensation is proscribed by § 13, Art. VI of the Constitution of South Dakota. Alcorn v. Edmunds County, 59 S. D. 512, 241 N. W. 323. The constitutional mandate is not that a remedy at law shall be afforded for the taking of private property for a public purpose. It provides that "Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained, and before possession is taken." To assure the actual payment of such compensation, this court remanded a cause with directions "to enter judgment enjoining defendant city from discharging the contents of its sewer system upon the lands of plaintiffs, unless within a reasonable time, to be fixed by the trial court, the city shall acquire the right thereto by consent or condemnation." Horstad v. City of Bryant, 50 S. D. 199, 208 N. W. 980, 981. And see Searle v. City of Lead, 10 S. D. 312, 73 N. W. 101, 39 L. R. A. 345; Annotations 133 A. L. R. 11 and 128 A. L. R. 1195, and Byram Lawein, 57 S. D. 403, 232 N. W. 907.

It follows that we are of the opinion that the drainage is unlawful and that the trial court erred in entering judgment for the defendants.

The judgment of the trial court is reversed.

ROBERTS and SMITH, JJ., and WARREN, C.J., concur.

RUDOLPH, P.J., and SICKEL, J., dissent.

WARREN, C.J., sitting for POLLY, J.

RUDOLPH, Presiding Judge, and SICKEL, Judge (dissenting).

We concur in the majority opinion in so far as it holds that the owner of an upper estate may not drain a landlocked basin on his land to a like basin on the lower estate and thus relieve the upper estate of a burden at the expense of the lower estate. However, we do not agree with the majority opinion in so far as it holds that the court erred in failing to restrain the maintenance of the highway ditches. It is our opinion that the plaintiffs have an action at law to recover for any damage they have sustained. The construction of this highway was performed by the county, an agency of the state, acting in a sovereign capacity and it could have exercised its power of eminent domain in the taking or damaging of plaintiffs' property. However, when a public work is completed by a county without the exercise of the power of eminent domain the obligation to compensate for the damage occasioned by such work is not terminated by its completion and any person whose property is taken or damaged thereby may recover compensation for the property thus taken or damaged. Mayer v. Studer & Manion Co., 66 N. D. 190, 262 N. W. 925. In the case of Vesely v. Charles Mix County, 66 S. D. 570, 287 N. W. 51, the cause of action sought to be stated by plaintiff was based upon negligence and not for the taking or damaging of private property without compensation and it is clear, therefore, that this case has no application to the present facts.

The facts in the instant case disclose that the highway and the drainage incident thereto had been constructed in 1930. It was not until 1944 that plaintiffs brought this action for an injunction. The drainage was for the improvement of the highway and there was no negligence or bad faith on the part of the highway officers in construction. Less than 8 acres of the 50 acre lake, into which the water from the highway construction drains, is located on the land of these plaintiffs. The larger portion of this lake is on land owned by the brother of these plaintiffs who con-

sented to the drainage of this highway and the topography of the land is such that any excess water in the lake tends to spread over the brother's land and not over the land of these plaintiffs. The year 1944, when this action was started, was a year of excessive rainfall. Residents of the community testified that long before this highway was built this lake was full in wet years and that they fished and shot ducks from the lake. The entire testimony fairly establishes that plaintiffs' damage, if any, is trivial. The trial court found: "* * * the damages, if any, suffered by plaintiffs, or either of them, were caused by excessive rainfall, and said damages, if any, are trifling as compared to the benefit received by the community through the construction of said highway grade and ditches; that such highway grade and ditches were constructed by proper governmental authority and remained so for many years as constructed without objection from plaintiffs; * * *."

This court said in the case of Thompson v. Andrews, 39 S. D. 477, 165 N. W. 9, 13: "It might well happen that one might have a right to restrain another from emptying onto his land through an artificial ditch waters stored in a reservoir, and yet have no equitable ground for an injunction requiring the closing of the ditch after such waters were so discharged."

In the case of Parsons v. City of Sioux Falls, 65 S. D. 145, 272 N. W. 288, this court held that injunction does not issue as a matter of course where property is taken or damaged for a public purpose without first paying compensation for the property thus taken or damaged but the granting or refusal of the injunction rests in the sound discretion of the court under the facts of each particular case. It was pointed out in that case that a public interest was there involved which greatly exceeded the private or personal loss or inconvenience resulting to the plaintiffs should the injunction not issue. So, in this case, not only is the alleged damage to the plaintiffs trivial when standing alone, but as found by the trial court "it is trifling as compared to the benefit received by the community through the construction of said highway grade and ditches".

For the reasons given above and under all the facts and circumstances disclosed by this record, it is our opinion that the trial court did not abuse its discretion in refusing to grant the injunction.