BOGUE, Respondent v. CLAY COUNTY, Appellant

(60 N. W.2d 218)

(File No. 9362. Opinion filed September 25, 1953)

**Everett A. Bogue,** Vermillion, for Respondent.

**Martin Weeks, Jr.,** Vermillion, and **Louis B. French,** Yankton, for Appellant.

LEEDOM, J. Plaintiff landowner obtained a judgment in the circuit court enjoining the defendant Clay County

from discharging upon plaintiff's land surface water and silt collected in a road ditch; and for $300 damages resulting from the flooding of the land in 1951. Clay County has appealed. We affirm the judgment.

The appellant county urges 5 grounds to establish its. nonliability. They are: (1) that there is no cause of action against the county in that it had no duty to perform in the highway improvement resulting in the ditch, inasmuch as the road was built under the provisions of SDC Supp. 28.0225 through 28.0231, Ch. 116, Laws of 1945, pursuant to which the State of South Dakota rather than Clay County entered into the contract for the grading; and the county received Federal Aid; that there being no duty in the county there can be no breach of duty nor any cause of action; (2) that there is insufficient evidence to support the trial court's finding that respondent's damage was caused by an artificial diversion of water and that the flooding if any is due to a natural flow of water; (3) that even if the county did divert water onto and flood respondent's land it had gained a prescriptive right to do so; and that respondent's laches bar his remedy; (4) that in no event is respondent entitled to injunctive relief; or (5) to damages.

■ ■ Appellant's point (1) is not well taken. A county road is no less a county road for being built with Federal Aid under SDC Supp. 28.0225 et seq. This act requires "the political subdivision having control of the highway" to request the improvement project by resolution, SDC Supp. 28.0227, and appellant so instigated the regarding of the county road that resulted in the questioned changes in the ditch. The act specifically provides that the "jurisdiction and control of the highways * * * shall .be and remain in the county", SDC Supp. 28.0230; and that the state participates only as the agent of the county. SDC Supp. 28.0231. Clearly the position of Clay County, with respect to the "taking" or "damaging" of respondent's property for highway purposes, that is with respect to acquiring whatever private property was needed and damaged for the public use, is the same as if the road had not been built under the Federal-Aid plan. Proceeding then to a consideration of the problem as if the county had not received Federal Aid it is

highly significant that respondent's action is not based on negligence; there is no allegation of negligence in the complaint. See Hyde v. Minnesota, D. & P. Ry. Co., 29 S.D. 220, 231, 136 N.W. 92, 96, 40 L.R.A.,N.S., 48. The action rather is for "taking"or "damaging" property for a public use, the complaint alleging that appellant's reconstruction of the road "greatly diminished" respondent's premises. Neither the county nor even the sovereign state can take or damage private property for public use without first paying for it. Art. VI, Sec. 13, State Constitution; and see discussion in Hyde v. Minnesota, etc., supra. The instant case is distinguished from Vesely v. Charles Mix County, 66 S.D. 570, 287 N.W. 51, as that action was based on negligence; and from Alcorn v. Edmunds County, 59 S.D. 512, 241 N.W. 323, in that there the liability of the county depended on statutory provisions not here involved. The liability of a county under circumstances of "taking" or "damaging" private property not essentially different from the manner of taking or damaging present in the case at bar, was recognized in La Fleur v. Kolda, 71 S.D. 162, 22 N.W.2d 741.

Appellant's points (2) and (3), i. e., insufficiency of the evidence and the prescriptive right to discharge the waters on respondent's land, involve determination of fact questions some of which in our opinion are close but all of which were resolved against appellant by the trial court.

The ditch involved is the usual drainage ditch immediately adjacent to the side of graded roads, constructed to drain surface water away from the road bed. This ditch is on the west side of the county highway which extends directly north from the Vermillion river bordering respondent's bottom land on the east a distance of about 80 rods or quarter of a mile; then over a rather abrupt hill, "the Vermillion River bluffs" and directly north to a "summit" an additional estimated mile and a half where the general course of drainage changes. The ditch parallels the road all the way on the west side unobstructed from the summit south to a point just over the brow of the bluff where it terminates. As the new grade exists there is no ditch from the point of termination on the bluff south to the river inasmuch as the elevation of the road grade is of a greater height, above the adjoining

land, than the depth of the designed ditch. The point where the ditch ends is adjacent to plaintiff's land which extends along the west side of the road south to the river as stated and north over the brow of the hill about a quarter of a mile. The road was reconstructed in 1949. At that time a county road had been in the same location for many years, more than 26, and a ditch had extended along the west side of the old road. According to all the testimony the new ditch is substantially wider than the old, possibly as much as 4 feet wider in places, and about 6 or 8 inches deeper. It is also undisputed that the old ditch ran from the summit south over the brow of the hill and then from an indefinite point south of the hill on south to the river. Respondent's witness, the tenant on the land for more than 20 years, testified that the ditch ran without a break from the summit to the river. An engineer called by both appellant and respondent testified that during his observation going back as far as 1940, the old ditch extended from the north all the way to a point part way down the hill where it ended and began again at approximately the foot of the hill and extended on south "practically to the river". The engineer characterized the ditch at the bottom of the hill as a borrow pit. On cross-examination the tenant, confronted with the claim that there was never a ditch from the foot of the hill for a short distance south, testified that there had always been a ditch there but that it had become somewhat filled at the foot of the hill with gravel. There is no dispute that from practically the river to "approximately the foot of the hill" there had always been a ditch along the west side of the old road grade that served to drain at least some of the water off respondent's bottom land into the river. Respondent's tenant testified the old ditch had always adequately drained the low land including all surface water coming over the brow of the bluff in the ditch. The engineer testified that the old ditch did not drain all of it. Appellant offered evidence of unusually heavy rainfall in 1951 the year for which the court allowed flood damages. The tenant testified that he had never at any other time, including other years of exceptionally heavy rainfall, had any serious trouble and that the old ditch proved an adequate drain in all these years. The engineer

testified that a ditch could be constructed to carry the water across the bottom land but it would not be according to standard practice. The plans for the new construction prepared in 1940 show cross sections of both the old and the new grade at regular 100′ intervals. These plans show that the old ditch lapsed or "tailed out" at about the place indicated by the engineer's testimony. On the strength of this evidence that the old ditch discontinued part way down the hill as far back as 1940 and on the inference that there must have been no ditch at this point at any time prior to 1940 since there had been no substantial work done on the highway except in 1949, appellant argues there was no ditch at any time from the point part way down the bluff to the "borrow pit" at the foot of the hill and that therefore even the old ditch discharged waters over respondent's land. It is on this contention that appellant bases the claim to a prescriptive right to discharge the waters.

The oral evidence and a topographical map indicate that the land north of the bluff to the summit is rather flat and that the general direction of drainage from the summit to the river is toward the south and at places between the summit and the bluff somewhat southeast. North from the summit the drainage is toward the north. There are no culverts across the highway grade at any place from the summit to the river and surface waters draining from the drainage area west of the road, an area about 800 feet wide at its greatest width, follow the ditch south over the brow of the bluff and discharge and spread upon respondent's bottom land. On the upland the ditches of an east-west township cross-road contribute drainage from the west. There is no evidence of a nautral depression forming a water course on respondent's land at the point where the ditch discharges its accumulation or anywhere else across the flooded bottom land which is so nearly flat that the water from the ditch and other natural drainage from the north gathers until it reaches a depth of several inches when some finds its way into a creek and thence to the river; the rest finally disappears through percolation and evaporation. The evidence indicates that the land east of the road from the summit to the river drains westerly toward the road in places but that

in at least one portion of this area the drainage is southeast-erly or away from the road in a continuation of a gentle southeasterly slope beginning west of the road. Appellant contends that the road actually follows a natural water course.

From the evidence the circut court found that prior to the road improvement of 1949 there had been "adequate and normal drainage along the west side of said highway from the brow of said hill to the Vermillion river" and "there was no unusual or unnatural discharge of surface waters on plain-tiff's bottom lands from the ditch * * *"; that the ditch con-structed by the county in 1949 collected and cast on respond-ent's lands a large volume of surface waters that would not otherwise reach there, at a point where "there is no natural course of drainage, natural depression, drainway, or water-course * * *"; that the maintenance of the reconstructed ditch resulted in flooding 30 acres of respondent's bottom land so that it became useless as cropland in 1951. The cir-cuit court rejected specific findings of fact proposed by ap-pellant to the effect that the road was naturally in a draw, that water that reached respondent's land through the ditch would reach there naturally, that respondent's damage was due to excessive rainfall, that the damage was trivial, that the ditch and the discharge of water therefrom as it existed at the time of trial had so existed for more than 20 years, and that the drainage across respondent's bottom land is "through a broad but defined water course."

Under an elementary rule of appellate procedure we will not disturb the trial court's findings of fact unless they are against a clear preponderance of the evidence or so long as there is any credible evidence to support them; and to such findings of fact we give great weight. In the trial of this case the circuit judge not only had a chance to see the witnesses and to form a firsthand opinion of the credibility of the testimony of each, but he viewed the premises involved. As we said in the recent case of Weidmeier v. Edelman, 75 S. D. 29, 58 N.W.2d 306, 307, "We must presume that this view was of some value in assisting the judge to determine the is-sues of fact." Under these rules it is our view that the evi-dence supports the findings of fact entered by the circuit court.

Such findings establish that appellant artificially collected and drained onto respondent's land surface water from the upper lands of its own right-of-way and of other owners and discharged it in unusual and unnatural quantities not into a natural watercourse, but at a point where it spread onto respondent's land and did not flow over it in the course of natural drainage but remained there until much of it disappeared only through percolation and evaporation and some of which would never have reached respondent's land except for the artificial interception. This method of draining surface waters violates principles well established in this jurisdiction and which apply with equal force to drainage by a county for highway purposes and to drainage of agricultural land. See La Fleur v. Kolda, 71 S.D. 162, 22 N.W.2d 741; Johnson v. Metropolitan Life Ins. Co., 71 S. D. 155, 22 N. W. 2d 737; Thompson v. Andrews, 39 S.D. 477, 165 N.W. 9; and Boll v. Ostroot, 25 S.D. 513, 127 N.W. 577. Respondent's bottom land was flooded and the evidence supports the court's finding that the flood rendered 30 acres useless for crops in 1951. We cannot say that such damage and the prospect of more of the same is trivial.

 Appellant's claim to a prescriptive right to discharge the waters onto respondent's land is weak because of the failure of proof to cover the entire 20 year prescriptive period. The direct proof goes back to 1940 covering a nine year period only prior to the filing of respondent's action. For the balance of the 20 years appellant relies on an inference hereinbefore mentioned that the ditch opened onto respondent's property more than 20 years prior to 1949 claiming that such inference may justifiably be drawn from the testimony that there was no ditch there in 1940 and that the road had not been substantially improved from the time of construction to 1949. We are not warranted to draw such inference and thereby set aside the trial court's finding to the contrary nor against the tenant's direct testimony that the old ditch had adequately carried all water even in the wet years and had in fact been a continuous ditch without a break, only somewhat filled by gravel at the foot of the hill. Appellant's claim of a prescriptive right to discharge waters as discharged in 1951 is in direct conflict with the trial

court's finding that no unusual discharge occurred prior to 1949 and did occur in flooding proportions thereafter. Appellant of course had the burden of proving all the essential ingredients of the claimed easement gained over a 20 year period of use and enjoyment. Gould on Waters, Second Edition § 342, page 622 says:

> "Rights gained by prescription are limited in extent by the previous enjoyment, and cannot be materially varied to the injury of others, unless the new use has been the same continuously for a long period of years, and is itself a prescriptive right. The long enjoyment of a ditch raises no presumption of the right to use another ditch which differs therefrom in an appreciable degree, either in locality or dimensions, and establishes no right to permit it to overflow injuriously upon the land through which it is established."

We are of the view appellant has failed to establish a prescriptive right to discharge waters onto respondent's land. Futhermore we believe the cases of La Fleur v. Kolda and Boll v. Ostroot, supra, rule out appellant's claim that respondent's suit was barred by laches. The record in this case fails to disclose any substantial delay or any failure to act on the part of respondent when the injury to his property became known.

 Appellant's contention that injunction will not lie against the county, appellant's point 4, rests on certain matters hereinbefore settled, matters such as respondent's loss of right through laches and the county's immunity because of the provisions of the statute providing Federal Aid for secondary roads. Appellant argues in addition that if the county was responsible for design of the road and it was designed in good faith though defectively, injunction will not lie. Such argument is based on the premise that this is a negligence action and it is not that as previously pointed out. In a case such as this brought for the taking or damaging of private property for a public use without prior payment injunction is a well recognized remedy. In the case at bar the

judgment grants to the appellant county a period of 40 days in which to remedy the drainage to avoid injury to respondent. The record discloses that it is practicable to drain the highway and adjacent land without flooding respondent's premises. The judgment seems to be well within the principle recognized in La Fleur v. Kolda, supra, 22 N.W.2d 741, 744, and the precedent of the cases there cited.

Appellant finally claims as point 5 of its case on appeal that it is not liable in damages. Certain grounds urged are repetitions of the claims made of general nonliability which we have hereinbefore rejected. It is further argued that such damage as respondent claims, due to flooding, was covered by compensation received when right of way for the road and ditch were originally acquired. We believe this contention unsound. Flooding is clearly established as an invasion of property rights, and as compensable injury in numerous decisions of this court including La Fleur v. Kolda, supra, and others hereinbefore cited; and see Nelson v. City of Sioux Falls, 67 S.D. 320, 292 N.W. 868, Farnham in his work "Waters and Water Rights", Vol. 2, § 188a, p. 978 says:

> "Intimately connected with the question of consequential injuries is the one as to how far the damages for the injury done by surface water in the improvement of a highway are included in the compensation made for the right of way. Such compensation includes all injury which may be contemplated as likely to result from the proper and careful performance of the work of improving the highway. It will include all damages which may result from the change of the grade of the highway, in the proper and skilful performance of the work. But the right to open and improve a highway does not include the right to use it as a water course nor to gather together water and fail to care for it. Therefore, damages from such acts cannot be presumed to have been within the contemplation of the parties when the compensation for laying out the highway was made."

To hold that the right to flood large areas of adjoining land is a right acquired in the purchase or condemnation of highway right-of-way would be to require an unnecessary acquisition of property and make the cost of highways needlessly excessive.

▆▆▆ Much of appellant's argument against the allowance of damages actually has application against damages for negligence where a county's liability is concededly ruled out under the authorities hereinbefore cited. We believe it is sound principle to permit recovery for a temporary taking such as has occurred here through the flooding of plaintiff's premises. Such recovery is wholly consistent with the injunctive relief granted as it appears further injury can be avoided and that a permanent taking of the damaged property is not necessary for the public use. The relief granted seems reasonable and in conformity with the constitutional mandate hereinbefore cited. See the discussion relative to both the remedies of injunction and money damages for wrongful taking and damaging of private property in the public use in Parsons v. City of Sioux Falls, 65 S.D. 145, 272 N.W. 288; see also Mayer v. Studer & Manion Co., 66 N.D. 190, 262 N.W. 925 and Gledhill v. State, 123 Neb. 726, 243 N.W. 909.

The judgment of the circuit court is affirmed.

All the Judges concur.