ISEMAN CORPORATION, Appellant v. RAPID CITY, Respondent

(137 N.W.2d 885)

(File No. 10223. Opinion filed November 17, 1965)

**Whiting, Lynn, Freiberg & Shultz** and **Melvin D. Wedmore,** Rapid City, for plaintiff and appellant.

**Bangs, McCullen, Butler & Foye** and **H. F. Fellows,** Rapid City, for defendant and respondent.

RENTTO, J.   The plaintiff's real property located in defendant city, and some personal property that it had there stored, were injured by surface waters that accumulated on the premises. It brings this action to recover damages for such injuries on the theory that the actions of the defendant city occasioned its loss.

The complaint alleges two grounds of liability: (1) that the city had permitted the C. & N. W. Ry. Company to remove a trestle from its roadbed that had carried the runoff from plaintiff's property and to substitute therefor an inadequate culvert; and (2) that the city constructed a street a short distance from such premises without making adequate provision for the drainage of the surface waters therefrom. Because of the posture in which the case was submitted to the trial court only the second ground of plaintiff's complaint is involved in this appeal.

In addition to a general denial the answer of the city alleges nine affirmative defenses. By agreement of the parties in presenting the matter to the trial court only two of these were asserted: (1) that the complaint fails to state a claim upon which relief can be granted; and (2) that the street involved was designed, planned and constructed by the South Dakota State Highway Department in conjunction with the Bureau of Public

Roads, and said parties had exclusive control of all construction and design.

The parties stipulated that the issues raised by these defenses, which they regarded as being in the nature of a motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, be considered by the court on the following factual basis:

"I.

"On the 4th day of September, 1956, the governing body of the City of Rapid City passed a resolution dealing with construction of the road involved in this case, a copy of which is marked Exhibit 'A' and attached hereto and made a part hereof by this reference.

"II.

"That thereafter on September 13, 1956, the road of which the Plaintiff complains in this case was constructed by the State Highway Department of the State of South Dakota by a contractor of its selection.

"III.

"That on the 13th day of September, 1956, the City of Rapid City and the Department of Highways, State of South Dakota, entered into an agreement that the City of Rapid City, at its own cost and expense, would maintain the road involved in this case after its construction. A copy of the maintenance agreement dated September 13, 1956, is marked Exhibit 'B' and attached hereto and by this reference made a part hereof.

"IV.

"That the City of Rapid City secured the right of way necessary for construction of the road involved in this case, and passed a resolution on June 11, 1956, declaring the necessity for condemnation of land for the construction of said road, a copy of which is marked Exhibit 'C', attached hereto and by this reference made a part hereof.

"V.

"That on November 22, 1957, the then acting City Attorney for the City of Rapid City prepared a certification that in his opinion the right of ways for the Omaha Street extension project which includes the road involved in this case had been acquired or obtained by the City of Rapid City, either by purchase, condemnation, right of entry, or dedication. A copy of the certification is marked Exhibit 'D' and attached hereto and by this reference made a part hereof.

"VI.

"That the road involved in this case is not a part of the Interstate Highway System.

"VII.

"That the plans and specifications of said road were prepared by the State Highway Department and that said plans and specifications were approved by the City of Rapid City on September 4, 1956, as evidenced in Exhibit 'A' attached hereto. The Construction of said road was in full control of and was initiated and completed by the State Highway Commission of the State of South Dakota."

and

"It is hereby stipulated and agreed by and between the parties that the portion of Mountain View Road involved in this case is a part of the State Trunk Highway System of the State of South Dakota and is so designated on the map of said State Trunk Highway System."

Being of the view that the holding in Hurley v. City of Rapid City, 80 S. D. 180, 121 N.W.2d 21, was controlling, the trial court dismissed the action. Plaintiff appeals from that determination. His basic claim is that the rule of the Hurley case is not here applicable.

In that case we held that "the fact a municipal corporation is asked and does adopt or consent to plans for Interstate High-

ways is not an exercise of its right of eminent domain or sub-'ject it to an action for damages when the State Highway Commission thereafter constructs or causes the construction." Plaintiff takes the position that this rule does not apply because we are here concerned with construction that was part of the State Trunk Highway System. We think the rule adopted in the Hurley case is equally applicable here.

While there are differences between the highways which are a part of the Interstate System and those that comprise the State Trunk System as to their type and general purpose, as well as other details including the Federal participation in each, they are both included within the general system of highways known as the Federal-aid systems. 23 U.S.C.A. § 101 et seq. The statutes spelling out the basic authority and responsibility of the Federal authorities and our State Highway Commission in each seems to be the same. U.S.C.A. Title 23, § 101 et seq.; SDC 1960 Supp. 28.02. These were the basis on which we predicated our holding in the Hurley case.

The resolution referred to in the stipulation of facts as Exhibit "A" contains all of the provisions of the resolution in the Hurley case, except paragraph 4 relating to limited access. As to paragraphs 2 and 3 it differs from the Hurley resolution in that the minimum speed to be designated is 35 miles per hour rather than 50, and the prohibition against parking is only as to double and diagonal parking. These variations in the two resolutions obviously arise from the difference in the type and purpose of highways involved and have no bearing on the ultimate decision in these cases.

As decisional support for the view that the city is liable for its injuries the plaintiff here urges the same cases that were urged upon us by the plaintiff in the Hurley case. We there rejected the doctrine of these authorities and are not persuaded that we should depart from that holding.

Affirmed.

HANSON and BIEGELMEIER, JJ., concur.

HOMEYER, J., dissents.

ROBERTS, P. J., concurs in dissent.

HOMEYER, Judge (dissenting). I respectfully dissent. In my opinion, this case is not controlled by our decision in the Hurley case referred to in the majority opinion. In that case plaintiffs sought damages for a partial deprivation of access resulting from erection of a barrier on a street which was extended and constructed to connect with an interstate highway built as a part of the National System of Interstate Highways. The authority for the State Highway Commission to act and cooperate in such construction emanates from Ch. 104, Laws of 1955, now SDC 1960 Supp. 28.0231 through 28.0236.

The State Trunk Highway System as we now know it had its origin in Ch. 333, Laws of 1919 with amendments and enlargements limited only by the number of subsequent legislative sessions. Ch. 139, Laws of 1953, now SDC 1960 Supp. 28.0209 vested discretionary authority in the Commission to "extend said system to include any street or streets within the limits of any city if necessary to make a continuous route for any State Trunk Highway through the city * * *". In Hurley the cooperation of the city in such construction was only perfunctory. We quote from the opinion in that case: "* * * the work was in full control of, initiated and completed by the State Highway Commission. That it sought and obtained the consent of the city so as to maintain good relations between governmental subdivisions and departments and cooperation to exercise its police power to regulate traffic thereon is no reason to hold the city legally responsible." In the instant case, its contribution was real and substantial. In advance of construction (1958), the city on June 11, 1956, adopted a Resolution of Necessity for Condemnation describing tracts needed to implement the construction. On September 4, 1956, the city entered into an agreement with the state which provided:

(1) that the Highway Department would submit a project for the improvement and recommend its approval by the Commissioner of Public Roads with funds apportioned the state under the Federal Highway Act, subject to the condition that the city shall provide for its proper maintenance after completion, and

(2) the city requested the Highway Department to submit the project with their recommendation for approval, and agreed if constructed by the Highway Department and Commissioner of Public Roads, it thereafter, at its own cost and expense, would maintain the project in a manner satisfactory to them, and make ample provision each year for such maintenance. See SDC 1960 Supp. 28.0210 which charges cities with a population of over 2500 with the duty to maintain State Trunk Highways through the city after construction. On November 22, 1957, the city certified that it had obtained all necessary right of way either by purchase, condemnation, right of entry or dedication.

The city was an active participant in and the chief beneficiary of the construction. Its actions in conjunction with the state agency amounted to an approval and acceptance of the street improvement and it became responsible for damages incidental thereto. Henry Shenk Co. v. City of Erie, 352 Pa. 481, 43 A.2d 99; Wood v. Foster & Creighton Co., 191 Tenn. 478, 235 S.W.2d 1. In my opinion the basis for liability in this case is not materially different than when we held the county liable in Bogue v. Clay County, 75 S.D. 140, 60 N.W.2d 218.

I am authorized to say that ROBERTS, P. J., concurs in this dissent.