HEEZEN et ux. and C. G. STEELE, Plaintiffs and Respondents

v.

AURORA COUNTY et al., Defendants and Appellants

and

CRYSTAL LAKE TOWNSHIP, Defendant and Respondent

(157 N.W.2d 26)

(File Nos. 10377, 10378, 10381, 10382. Opinion filed March 15, 1968)

**Walter C. Miller,** Plankinton, **Thomas L. Anderst,** Kimball, for defendant and appellant, Aurora County.

**J. L. Morgan,** Mitchell, for defendant and respondent, Crystal Lake Township.

**Fred Shandorf,** Mitchell, **Lynn Fellows,** Plankinton, for plaintiffs and respondents, Heezens.

**Fred A. Tinan,** Mitchell, for plaintiff and respondent, Steele.

RENTTO, Judge.

Parts of the farms owned by the plaintiffs in these two actions, located in Crystal Lake Township, Aurora County, South Dakota, were flooded in the summer of 1962 by an overflow from Crystal Lake. Their claims are that the manner in which the defendants graded, maintained and improved the road on the section line between sections 11 and 14 diverted water from another watershed into Crystal Lake causing the overflow which flooded their lands. In these actions they seek to enjoin defendants from continuing such diversion and to recover damages.

In the action by the Heezens, judgment was entered against Aurora County awarding them $10,000 as compensation for the taking of their property and enjoining both defendants from diverting water through the ditches on the sides of the highway into Crystal Lake and maintaining them in their present condition. They were further ordered to immediately fill these ditches level with the surrounding land on both sides of the road and especially at the high point about 1,000 feet west of Crystal Lake. In the Steele action an award of $8,000 was entered against Aurora County and the defendant restrained in the same manner as in the Heezen judgment. Aurora County appeals from both judgments.

While many errors are assigned its claims fall into three broad categories: (1) The evidence does not support the finding that the flooding of plaintiffs' lands resulted from any action by the county; (2) that the county had a prescriptive right to discharge onto the lands of the plaintiffs water from another watercourse; and (3) that the flooding complained of was the result of an unprecedented amount of snow and rainfall in the spring

and summer of 1962. The evidence as to most of the material issues found by the trial court in its decision is conflicting, and at times confusing.

Basic in the flooding involved is the highway above referred to, an east-west road, between sections 11 and 14, which runs easterly into Crystal Lake. It is known as the Crystal Lake road. Crystal Lake is a semi-circular basin covering about 160 acres in sections 12 and 13 and having no natural outlet. The lowest point of the rim of this basin is on the east side of it in section 12. It is a short distance west of the Heezen farm and about the same distance northwest of the Steele farm.

The natural watershed of the lake does not exceed four sections of land in area. West of the lake in the E 1/2 of sections 11 and 14 is a ridge of higher ground which runs in a north-south direction across and through said sections. This formed a natural barricade preventing surface waters from draining into the lake, except such surface waters as fell east of it. In the west part of section 11 and in parts of sections 2 and 3 is located a large marsh or slough known as Lemke Lake. In sections 15 and 16 is another large slough about 130 acres in size known as Boedeker Lake. The latter is about two miles west and a mile south of Crystal Lake.

The findings of the trial court are that prior to 1959 the county constructed a high grade county road, with ditches on both sides, running south and east of the town of White Lake. This highway with its ditches and culverts drained surface waters falling in the area south and east of that town into Boedeker Lake. The county also built a highway running north and south through Crystal Lake Township on the section line between sections 2 and 3, 11 and 12, and 14 and 15, continuing to the south county line. As a result of these highways and the ditches and culverts in connection therewith, a large area of land extending some 10 or 12 miles northwest of Boedeker Lake is being drained into that lake basin.

In or about the year 1934 the defendant township established and built the Crystal Lake road and the ditches in connection

therewith. Its grade was higher than the adjoining ground except where it cut through the ridge of higher ground west of the lake. Before this road was built a ditch was dug to drain the water from Boedeker Lake in a northeasterly direction. By reason of this such water flowed onto the west part of section 14 and from there the natural drainage carried it north onto the west part of section 11, both of which are relatively flat, and on into Lemke's slough. The natural drainage from this slough was to the northeast to a body of water known as Main Lake. When the county built its road along the west section line of section 14 it installed two 36" culverts in this area under that road so as not to impede the drainage from Boedeker Lake.

When the Crystal Lake road was built it interfered with the northward drainage from Boedeker Lake and through its south ditch diverted some of this flow east into Crystal Lake. When drainage from Boedeker Lake was of such a volume as to fill the south ditch the excess would flow north across the Crystal Lake highway and by natural drainage into Lemke's slough. When this area became overloaded with water the excess would flow north and northeast and end up in Main's Lake. Prior to 1959 the action of the water in flowing north across this highway had washed away some of the grade lowering the highway for a distance of several rods. This allowed a large part of the water from the White Lake drainage area coming out of Boedeker Lake to flow north across the highway instead of following the south ditch to Crystal Lake.

From about the year 1941 until the early part of 1960 the Crystal Lake road was under the maintenance and control of Aurora County as a part of its county system of roads, after which it was removed from such system and again became a township road. In 1959 the county put gravel and oversized rock on that part of the Crystal Lake road that had been washed out which raised several rods of the grade several inches higher than it had previously been. There is evidence that this was a six-inch raise. It also deepened the ditches along the road. The purpose and result of this was to cause the water draining out of Boedeker Lake to flow east in the south ditch into Crystal

Lake instead of flowing north into Lemke's slough. Prior to 1959 the water level in Crystal Lake was shallow and in many of those years it was completely dry. In 1959 the water level in the lake began to rise. In 1960 it had become 7 ft. deep. In 1961 it was 9 ft. deep, within two or three feet of overflowing the banks on the east.

In the winter of 1961-1962 there was heavy snowfall throughout Aurora County, and heavy rain during the following spring and summer in the county and the area south of White Lake which drained into Boedeker Lake. This precipitation was at least 28", filling both Boedeker Lake and the Lemke slough and the lowlands adjacent thereto and when this water encountered the Crystal Lake road some of it was diverted thereby into Crystal Lake causing it to overflow its eastern bank and flood some of the lands of the plaintiffs. This overflow began on June 4, 1962.

As far back as the year 1900 and up until 1959 and during years when precipitation in the area was comparable to the period from 1959 to 1962, and particularly the years 1919 through 1921 with snow and rainfall in comparable amounts, Crystal Lake never contained more than 2 1/2 or 3 ft. of water, but in 1962 it became 12 ft. deep and throughout that summer overflowed creating an overflow channel 2 1/2 ft. in depth and 50 ft. wide.

Prior to the construction of the Crystal Lake road and the ditches alongside it, Crystal Lake had never had any appreciable amount of water in it nor had it ever overflowed. The trial court was of the view that the high ridge west of Crystal Lake would have blocked the flow of water from the west into the lake if it had not been cut through by the Crystal Lake road and that when Aurora County in 1959 raised the grade of that road by putting gravel and oversized rock thereon it created a material variance over the previously established grade. It became a dam or dike with its ditches so constructed as to artificially divert surface waters from a large drainage area to the northwest into Crystal Lake causing it to overflow in 1962 onto the lands of the plaintiffs.

It was likewise the court's view that the natural drainage area into Crystal Lake is so limited that without this artificial diversion it would not have overflowed in 1962. The heavy snow and rainfall of 1962 although placing an unusual amount of water on the plaintiffs' farms would not have flooded them to any appreciable extent. Allowance for this was made by the court in reducing the amounts awarded them proportionately to compensate for this factor. The court found that the damages suffered by the plaintiffs were proximately caused by the actions of the defendant county through the drainage system it established and through its maintenance and work on the Crystal Lake road, which among other things, raised the grade thereof.

■ The court concluded that the actions of the defendant county in causing the land of these plaintiffs to be flooded by diverting water from another watershed resulted in the taking and damaging of private property for public use for which they were entitled to be compensated. This is in accord with our holdings that such flooding of land is compensable under eminent domain provisions. La Fleur v. Kolda, 71 S.D. 162, 22 N.W.2d 741; Bogue v. Clay County, 75 S.D. 140, 60 N.W.2d 218. This rule is not pertinent when the owner of dominant land drains surface waters from his land into a natural watercourse. This feature distinguishes Johnson v. Metropolitan Life Insurance Co., 71 S.D. 155, 22 N.W.2d 737, relied on by the appellants, from the situation here involved.

■ The county urges that it should not be held liable because when the flooding of plaintiffs' land occurred the Crystal Lake road was no longer a part of the county highway system. That is a correct observation. However, we think it of no significance in view of the court's finding that the flooding of plaintiffs' farms was contributed to and caused by the county's maintenance of the Crystal Lake road which resulted in raising its grade. Since there is no showing that the township altered the grade thereafter we must presume that this raised condition of the grade continued to exist. Yankton National Bank v. Benson, 33 S.D. 399, 146 N.W. 582. The county's unilateral action in removing this road from its system, after raising the grade thereof

pursuant to SDC 1960 Supp. 28.0302, should not release it from the obligation to compensate the plaintiffs for the damage done to their property resulting from work done by the county on that road when it was a county road. See Application of Opladen, 172 Misc. 726, 16 N.Y.S.2d 13.

■ Appellants in several subdivisions of their brief earnestly argue that the evidence is insufficient to support the findings of the court. Litigants who take this position should bear in mind that the finding of facts is not our function. Hilde v. Flood, 81 S.D. 25, 130 N.W.2d 100. We merely review them. On critical issues the county urges its evidence which is contradicted by the landowner's evidence. Obviously the trial court did not accept the county's version in these instances and that was his right. He is the trier of the facts. In our review we have carefully gone over these rather voluminous records, but we are unable to say that any essential finding is against a clear preponderance of the evidence or is without credible evidence to support it. Consequently, we may not disturb the court's finding. Bogue v. Clay County, supra.

■ Moreover, the trial court viewed the area in company with counsel. In this state such view is not evidence, but as was said in Weidmeier v. Edelman, 75 S.D. 29, 58 N.W.2d 306, a case involving interference with the flow of surface waters, "We must presume that this view was of some value in assisting the judge to determine the issues of fact". Comments made by the judge in the course of this trial support the quoted statement. In assessing the sufficiency of the evidence we must give consideration to this factor.

■ ■ The trial court concluded that the county had not acquired a prescriptive right to flood the lands of the plaintiffs. We share that view. In Shearer v. Hutterische Bruder Gemeinde, 28 S.D. 509, 134 N.W. 63, this court said:

"The right of flooding another's land is an easement, the acquisition of which, by prescription, requires, inter alia, continuous enjoyment for the period of the statute of

limitations governing actions for the recovery of real property, which, in this state, is 20 years."

See also SDC 51.1102 and Kougal v. Curry, 73 S.D. 427, 44 N.W.2d 114, 22 A.L.R.2d 1039. The cause of action accrues and the statute begins to run when the landowner sustains the damage from the overflow. 54 C.J.S. Limitations of Actions § 172. Clearly, in this case the county had not acquired an easement by prescription to flood the lands of the plaintiffs because their farms were not flooded by the overflow from Crystal Lake until June 4, 1962. That the Crystal Lake road with its ditches had been in existence for more than 20 years and that its ditches had drained water into Crystal Lake during that time, might be urged as conferring on the county a prescriptive right to drain water into the lake, but it would be no basis for claiming a right to flood the farms of the plaintiffs.

The county argues that the flooding of plaintiffs' land was not caused by anything it did, but was due solely to the large amount of snow and rain that fell in the area in the winter and early summer of 1962, which was admittedly over-average precipitation for this period. The plaintiffs on the other hand contend that Crystal Lake would have been able to hold this over-average rainfall if it had contained only the 2 1/2 or 3 ft. which it normally held rather than the 9 ft. which was in it when the heavy precipitation fell. We believe that under this record the court was warranted in accepting the view of the plaintiffs. With only the normal 2 1/2 or 3 ft. of water in it Crystal Lake was able to accommodate all of the water that ran into it in the years 1959, 1960 and 1961 wihout overflowing. While the 1962 precipitation was extremely heavy there is no claim made or evidence to show that it even approached the combined precipitation of those years, which the lake was able to contain, with room to spare.

■ The complaints, as amended, in these cases allege both temporary and permanent damage to the properties involved. In trying and deciding them the measure of damages applied by the court was the difference in market value of these

farms before and after the flooding. This is the measure of compensation which governs where part of a tract is permanently taken or damaged. From this it would follow that the county was being required to pay for the right to permanently flood these farms to the extent of the flooding here involved. The injunctive and mandatory provisions of these judgments are inconsistent with such right.

In Bogue v. Clay County, supra, the award of compensation was held to be consistent with the injunctive relief because the taking there involved was temporary in nature. It consisted of flooding 30 acres for one crop year. In such cases the measure of damages is different than when the taking is permanent. See 29A C.J.S. Eminent Domain § 142; Nichols on Eminent Domain, 3rd Ed., § 12.5. The Bogue case also indicates that injunctive relief would not issue when the damage to the property is permanent. This we think is logical. To enjoin a party from causing water to flow onto an area that it had acquired the right to permanently flood would create an anomalous situation. Because the provisions of these judgments are incompatible they must be reversed.

All the Judges concur.