**Ralph E. LEE and Carolyn B. Lee, Plaintiffs and Appellants,**

v.

**Mark G. SCHULTZ, Defendant and Appellee.**

**No. 15682.**

Supreme Court of South Dakota.

Argued Oct. 8, 1987.

Decided June 8, 1988.

T.R. Pardy, of Mumford, Protsch & Pardy, Howard, for plaintiffs and appellants.

William J. Ellingson, Flandreau, for defendant and appellee.

SABERS, Justice (on reassignment).

Ralph and Carolyn Lee (Lees) appeal a verdict for Mark Schultz (Schultz) in Lees' nuisance action for an injunction and damages. We reverse and remand.

*Facts*

Lees and Schultz farm adjoining tracts of land in Moody County, South Dakota. There are two sloughs on Schultz' land—a small one consisting of nine acres and a large one consisting of thirty-two acres. The small slough drains naturally across a road and onto Lees' land. Prior to 1981, the large slough was a land-locked basin with no natural outlet. In January of 1981, Schultz dug a nine-feet-deep ditch on his own land that drained the large slough into the small slough.

During the four years prior to trial, the area in question experienced a 40% increase in rainfall over and above the average of the previous nine years. There were also several other sources of drainage water from other neighbors' property. As a result of all the sources of surface water, Lees experienced difficulty in farming certain portions of their property because the land was too wet and the excessive water resulted in some erosion.

Lees commenced a nuisance action against Schultz, seeking damages and a permanent injunction. Originally the complaint was dismissed by the circuit court. This court reversed the circuit court, *Lee v. Schultz*, 374 N.W.2d 87 (S.D.1985), and remanded. Lees demanded a jury trial on the issue of damages. Pursuant to SDCL 15–6–39(c),[1] the circuit court decided to try the issue of liability with an advisory jury.

---

1. SDCL 15–6–39(c) provides:
   In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury, or the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

Therefore, the jury sat in an advisory capacity on the liability issue and as trier of fact on the damages issue. However, no special interrogatories were submitted to separate the jury's determination on liability from its determination on damages. The advisory jury verdict was for Schultz. Despite the failure to obtain special interrogatories,[2] the trial court accepted the advisory verdict and entered findings of fact based thereon:

.     .     .     .     .

3. The large slough was a land locked basin with no natural outlet until in January, 1981, when Schultz constructed an artificial ditch wholly upon his own land, drained the larger slough into the smaller slough. When full, the smaller slough would drain across the road through a culvert onto Lees' land. The direction of the drainage ditch constructed by Schultz is the direction that water would flow in case of an overflow of the larger slough;

.     .     .     .     .

5. Testimony showed that gullies have appeared and erosion has occurred from surface waters in a large number of areas in Moody County in recent years where it had never occurred in the past;

.     .     .     .     .

7. That regardless of whether Defendant drained the slough described above, Plaintiffs would be experiencing water draining off of Defendant's land onto Plaintiffs' land at various times;

.     .     .     .     .

9. Water draining from Defendant's land onto Plaintiffs' land was surface water; and the water that did flow onto and across the Plaintiffs' land as a result of Defendant's drainage did not unreasonably or seriously damage Plaintiffs as the lower servitude land owner;

10. That before Defendant drained his larger slough, water drained from Defendant's farm land onto Plaintiffs' farm land and by draining the larger slough Defendant did not change the manner of the natural drainage, and did not increase the water draining onto Plaintiffs' land in unnatural or unusual quantities;

.     .     .     .     .

*Drainage Law Instruction*

Lees claim the trial court erred by incorrectly instructing the jury on applicable drainage law. "Jury instructions are adequate, if, when considered as a whole, they *correctly* state the law applicable to the case." (emphasis added) *Black v. Gardner,* 320 N.W.2d 153, 160 (S.D.1982). Instruction 12 provided as follows:

You are further instructed that the legal easement right of drainage has limitations even though the waters of the basin in question are surface waters and there is a legal burden upon servient lands to receive such waters through the natural water course crossing such lands, such burden and the accompanying easement is one that is *reasonable,* or, as previously instructed, one consonant with good neighborliness.

Under the claim of an easement *a party cannot rightfully turn upon the servient estate large volumes of water, out of all proportion to the capacity of the water course, and thus cause serious damage to the servient estate.* (emphasis added)

This instruction is clearly contrary to the major South Dakota cases on easement and drainage law. *See Winterton v. Elverson,* 389 N.W.2d 633, 635 (S.D.1986); *Feistner v. Swenson,* 368 N.W.2d 621 (S.D.1985); *La Fleur v. Kolda,* 71 S.D. 162, 22 N.W.2d 741 (1946); *Thompson v. Andrews,* 39 S.D. 477, 165 N.W. 9 (1917).

It appears from a first reading of Instruction 12 that it is in accord with South Dakota drainage law because it points out that "such burden" and the accompanying

2. If trial courts want to utilize advisory juries in a manner meaningful to themselves or for appellate review, not only must the instructions be accurate and complete, but special verdicts or interrogatories need to be submitted.

easement is one that is reasonable, or, as previously instructed,[3] one consonant with good neighborliness. As indicated, on its face this appears in conformance with the law and "reasonable[ness]." Even the second paragraph appears to be a correct statement of the law in that it points out that "a party cannot rightfully turn upon the servient estate large volumes of water, out of all proportion to the capacity of the water course, and thus cause serious damage to the servient estate." However, upon closer examination, this actually becomes the test for reasonableness or good neighborliness, totally distorting the real meaning of reasonableness or good neighborliness. This incorrect test permits a dominant landowner far too much leeway in damaging the servient estate. This paragraph permits a party to turn upon the servient estate large volumes of water, out of all proportion to the capacity of the water course, as long as it does not produce *serious* damage to the servient estate. Read another way, it permits a party to turn upon the servient estate less than large volumes of water, out of all proportion to the capacity of the water course, even if it causes serious damage to the servient estate. Read the third way, it permits a party to turn upon the servient estate large volumes of water, causing serious damage to the servient estate, as long as it is in proportion to the capacity of the water course. This is not reasonableness, good neighborliness or the test in South Dakota. *Thompson, supra; La Fleur, supra; Winterton, supra.*

In *Gross v. Connecticut Mutual Life Ins. Co.,* 361 N.W.2d 259, 267 (S.D.1985), we stated:

> Drainage allowed, in conjunction with the natural easement rights set forth in *Thompson,* is 'conditioned only that such drainage be accomplished without unreasonable injury to [one's neighbor's] land.' *Thompson,* 39 S.D. at 488, 165 N.W. at

13.... [S]urface water cannot be gathered together and cast in a body on the property of the lower owner ... so as to affect that neighbor's land in some other way than the way in which it has been affected before.

*Quoting* III Farnham, *Waters and Water Rights,* § 887, at 2578–79 (1904). *See La Fleur, supra.*

In *Feistner, supra,* there was evidence that Swenson cut through a graded road which had been damming water on his land. Feistner claimed that in releasing this water, Swenson unreasonably affected his servient land. Swenson countered that he simply cleaned out an existing culvert and that his actions did not affect plaintiff's land in any unreasonable way. These diverse contentions indicated a genuine issue of disputed material fact existed on the unreasonableness of Swenson's conduct.

In the present case, Schultz drained a thirty-two acre, land-locked slough into a nine acre slough by virtue of a nine foot deep cut which, in effect, drained an area of 114 acres. All of this water went into the natural water course and through a culvert on to Lees' land causing cuts and erosion. Expert testimony compared the drainage from the thirty-two acre, land-locked slough into the smaller nine acre slough as pouring a bucket into a tea cup. There was evidence that this water then went through a culvert on to Lee's land with such force that at one time it washed out the north boundary road a mile away. Yet, Instruction 12 did not prohibit this. Instruction 12 permitted this damage even if it was unreasonable. Instruction 12 permitted the draining of a land-locked, thirty-two acre slough in wet years even if it was unreasonable. Under Instruction 12, even the definition of "reasonable" was unreasonable.

Although the language of the second paragraph of Instruction 12 was taken

---

3. Contrary to the language of Instruction 12, there was no previous instruction on "good neighborliness." Therefore, the opportunity to correct the defects in Instruction 12 on the duty of the dominant landowner was missed. This omission and these defects somewhat explain the jury's confusion, exemplified by their question to the court:

"Please prioritize in order, the law of neighborliness, the law of the natural course of water, the law of Mr. Lee's responsibility to maintain appropriate waterways."

from the South Dakota case of *Thompson, supra,* it is not the proper test or measure of the landowner's burden because it permits unreasonable activity. It correctly states what a party cannot rightfully do but it implies far too much. The statement only purports to be the outer limit—not the measure of the duty of a dominant landowner to be used in instructing a jury.

As stated in *Winterton, supra* at 636: "[T]hose purchasing or acquiring land should expect and be required to accept it subject to burdens of natural drainage, but at the same time, the upper landowner should not be able to increase the natural burden of the lower estate." In view of the numerous ways that damage can result to a servient estate it is especially important for courts to maintain a watchful eye on instructions relating to reasonableness and good neighborliness. This trial court did not and it was reversible error.[4] *Thompson, supra; La Fleur, supra; Winterton, supra; Gross, supra.*

Because we reverse on the error in jury Instruction # 12 (the instruction on applicable drainage law) we need not address the other issues raised.

MORGAN and MILLER, JJ., concur.

WUEST, C.J., and HENDERSON, J., dissent.

HENDERSON, Justice (dissenting).

The trial court's jury instruction on drainage law was correct. The majority opinion, while citing *Feistner v. Swenson,* 368 N.W.2d 621 (S.D.1985), *LaFleur v. Kolda,* 71 S.D. 162, 22 N.W.2d 741 (1946), and *Thompson v. Andrews,* 39 S.D. 477, 165 N.W. 9 (1917), as support for its position, is, in effect, overruling them.

*Thompson* contained the following language:

But even though the waters of the basin in question are surface waters and there is a legal burden upon respondents' lands to receive such waters through the natural water course crossing such lands, *such burden and the accompanying easement is one that is reasonable, or, as above noted, one consonant with good neighborliness.* Under the claim of an easement *appellant could not rightfully turn upon the servient estates large volumes of water, out of all proportion to the capacity of the water course, and thus cause serious damage to respondents.*

*Thompson,* 39 S.D. at 489, 165 N.W. at 13 (emphasis added). At the end of that decision, the Court restated this message:

To summarize: We hold the rule to be that the owner of dominant agricultural lands, situate and lying in the upper portion of a natural drainage water course or water basin has, in the course of and for the purposes of better husbandry, a legal easement right, by means of artificial drains or ditches constructed wholly upon his own land, to accelerate and hasten the flow of waters that are surface waters under the rule herein laid down, and to cast the same into and upon a servient estate lying lower down in the same natural drainage water course, at that point where nature, by means of ravines or depressions, has indicated that such surface waters should find a natural outlet; *provided, however, that such surface waters should not be collected or permitted to collect, and then be cast upon the servient estate in unusual or unnatural quantities; and, provided, also, that the surface waters of one natural watershed or basin may not, by means of the cutting or removal of natural barriers, be cast into or upon lower lands lying in another and different natural drainage course or basin.*

**4.** Although error cannot generally be predicated upon the giving or refusing of instructions to an advisory jury, *Lounsberry v. Kelly,* 32 S.D. 160, 142 N.W. 180 (1913), *modified on rehearing,* 32 S.D. 456, 143 N.W. 369 (1913), the erroneous jury instruction in this case is inextricably tied to the trial court's erroneous conclusions of law, which in turn are based upon an adoption of findings of fact consistent with the advisory jury's determination. Therefore, even though an erroneous jury instruction to an advisory jury is not generally the basis for reversible error, it is here because it was incorrectly acted upon and compounded by the trial court's subsequent actions.

39 S.D. at 491–92, 165 N.W. at 14 (emphasis added). In *LaFleur,* while expressly overruling *Mishler v. Peterson,* 40 S.D. 183, 166 N.W. 640 (1918) (owner of dominant property allowed to drain land-locked basin on his property, through drains wholly on his property, into land-locked basin on servient property), the Court reaffirmed *Thompson:*

> This jurisdiction is committed to the principle that lower property is burdened with a natural servitude to receive surface waters from upper property, through such channels as nature has provided, and to the further principle that in the reasonable use of his property the upper owner may artificially drain the same of surface waters along the general course of natural drainage for the area drained, by constructing open or covered drains discharging the water on his own property into some natural watercourse or into a natural depression whereby the water will be carried into some natural watercourse across the servient premises, and such drains may hasten or increase the natural flow of surface water by cutting the rim of a pond or basin. SDC 61.1031. *Thompson v. Andrews,* 39 S.D. 477, 165 N.W. 9 [(1917)]; *Johnson v. Metropolitan Life Ins. Co.,* S.D. [71 S.D. 155,] 22 N.W.2d 737 [(1946)].

> \*    \*    \*    \*    \*    \*

> ... Thus on principle the lower owner cannot complain if his basin is filled by natural drainage from upper land. And we think it is not unsound to reason that the settler on lower land must have anticipated and understood that the watercourse across his land must carry an added burden of water as an incident of the improvement and reasonable use of the upper property.

*LaFleur,* 71 S.D. at 166–67, 22 N.W.2d at 743–44.

*Feistner* quoted directly the language of *Thompson* above, which the majority now rejects:

> The drainage rights of a dominant landowner must also be exercised reasonably even though the surface water is discharged into a natural watercourse.

In *Thompson v. Andrews,* 39 S.D. 477, 489, 165 N.W. 9, 13 (1917), we set forth the reasonableness doctrine:

> But even though the waters of the basin in question are surface waters and there is a legal burden upon respondents' lands to receive such waters through the natural water course crossing such lands, such burden and the accompanying easement is one that is *reasonable,* or, as above noted, one consonant with *good neighborliness.* Under the claim of an easement appellant could not rightfully turn upon the servient estates large volumes of water, out of all proportion to the capacity of the water course, and thus cause serious damage to respondents[.]

*Feistner,* 368 N.W.2d at 623 (emphasis added). *See also Gross v. Connecticut Mut. Life Ins. Co.,* 361 N.W.2d 259, 266 (S.D. 1985) (*Thompson* approved; "reasonable injury" is the limit of higher owner's rights).

The concerns expressed in the majority opinion, reached by a strained, hypertechnical reading of the law, do not justify departing from the settled law of this state. Discharge of "less than great" quantities of water are unlikely to cause unreasonable injury. (If they do, would they not be "great" in the context of that case?) Nor need we concern ourselves with large quantities of water which do not cause serious injury. If the water, however large in quantity, is within the capacity of the watercourse, it will stay in the watercourse, and, again, the defendant would not be unreasonable. The majority tilts at windmills.

The trial court should have been affirmed as to this issue.

I am hereby authorized to state that Chief Justice Wuest joins in this dissent.